*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, e-mail corrections@appellate.courts.state.ak.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| ALASKAN CRUDE CORPORATION and JAMES W. WHITE, | ) ) ) | |
| | ) | Supreme Court No. S-14148 |
| Appellants, | ) ) | |
| | ) | Superior Court No. 3AN-07-11471 CI |
| v. | ) ) | |
| | ) | O P I N I O N |
| STATE OF ALASKA, ALASKA OIL AND GAS CONSERVATION COMMISSION, | ) ) ) ) | |
| | ) | No. 6817 - August 30, 2013 |
| Appellee. | ) ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, John Suddock, Judge.

Appearances: Heather Gardner, Shortell Gardner LLC, Anchorage, for Appellants. Thomas A. Ballantine, Assistant Attorney General, Anchorage, and Michael C. Geraghty, Attorney General, Juneau, for Appellee.

Before: Fabe, Chief Justice, Winfree, Stowers, Maassen, and Bolger, Justices.

MAASSEN, Justice.

I.    **INTRODUCTION**

Alaskan Crude Corporation submitted an application to the Alaska Oil and Gas Conservation Commission to reopen the Burglin 33-1 well, a suspended well on the North Slope, to explore for oil and gas. Arguing that it was highly unlikely that oil from

the well would rise to the surface unassisted, Alaskan Crude made a series of requests to the Commission to be exempted from oil discharge response requirements or, in the alternative, to have the requirements reduced. The Commission made successive reductions to the technical flow-rate assessments and the response planning standards that it recommended to the Alaska Department of Environmental Conservation for use in setting Alaskan Crude's discharge response requirements. The Commission declined, however, to classify the Burglin 33-1 well as a gas facility, which would have exempted Alaskan Crude entirely from such requirements. Alaskan Crude appealed to the superior court, challenging the Commission's recommended response planning standards and its well classification. The superior court affirmed. Alaskan Crude appeals from the superior court's decision, including its award of attorney's fees to the Commission. We affirm.

## II.    FACTS AND PROCEEDINGS

### A.    Initial Application And Approval To Reopen The Burglin 33-1 Well

The Burglin 33-1 well, located on the North Slope, was drilled, tested, and then suspended in the 1980s. Alaskan Crude Corporation, a small operator, later initiated plans to reopen the well. In January 2006 Alaskan Crude submitted a sundry approvals application to the Alaska Oil and Gas Conservation Commission (the Commission) to reopen and test the Burglin 33-1 well. In February 2006 Alaskan Crude filed an application with the Department of Natural Resources (DNR) for a unified lease area, called the Arctic Fortitude Unit, that encompassed the Burglin 33-1 well. Alaskan Crude stated its intent to reenter the Burglin 33-1 well to test for "hydrocarbon bearing sandstones." In its applications and other communications with the Commission and DNR, Alaskan Crude indicated an interest in reentering geologic strata known as the

Ugnu and West Sak formations. Both the sundry application and the Arctic Fortitude Unit application were approved.

**B.    Oil Discharge Prevention Requirements**

Alaska Statute 46.04.030(b) provides that the operator of an oil exploration facility must hold an approved oil discharge prevention and contingency plan. The regulations governing such contingency plans[1] include 18 AAC 75.434, which lays out the oil discharge response requirements for oil exploration and production facilities. The regulation sets a response planning standard (RPS), which is the amount of oil that an operator must be equipped to contain or control and clean up in the event of a discharge.[2] The regulation's stated RPS may be reduced if an operator demonstrates to the Commission and to the Alaska Department of Environmental Conservation (ADEC) that a reduction is appropriate.[3] ADEC is charged by regulation with deciding whether to reduce the RPS, but it may consult with the Commission in reaching its decision.[4]

Alaska Statutes 46.04.050(c) and 31.05.030(*l*) exempt certain exploration facilities from these oil discharge prevention requirements. A well is not eligible for exemption, however, unless it is a "natural gas exploration facility,"[5] defined as "a

---

[1]    *See* 18 Alaska Administrative Code (AAC) 75.400 et seq. (2013).

[2]    An operator must be equipped to contain or control and clean up 16,500 barrels within the first 72 hours. 18 AAC 75.434(a)-(b). This is sometimes referred to as the "default" RPS. The regulatory standard also requires the capability to deal with "an additional 5,500 barrels for each of 12 days beyond 72 hours." 18 AAC 75.434(b)(2).

[3]    18 AAC 75.434(b)(2).

[4]    18 AAC 75.434(f)(2).

[5]    AS 46.04.050(c); AS 31.05.030(*l*).

platform, facility, or structure that . . . is used solely for the exploration for natural gas."[6] Another prerequisite for exemption is a determination by the Commission "that evidence obtained through evaluation demonstrates with reasonable certainty that all of the wells at a natural gas facility will not penetrate a formation capable of flowing oil to the ground surface."[7]

### C. Alaskan Crude's Request For An RPS Reduction

In April 2007 Alaskan Crude asked ADEC for an 85% reduction in the default RPS for the Burglin 33-1 well, asserting that the flow of oil from the well was so limited that it could not reach the surface without mechanical assistance. ADEC consulted with the Commission. On June 26, 2007, the Commission determined that the Ugnu and West Sak formations "are highly unlikely to produce liquid hydrocarbons to the surface in amounts greater than 825 barrels of oil per day [bopd]" and noted that this was the maximum reduction to the RPS that could be allowed under ADEC regulations. On July 2, 2007, ADEC adopted this RPS recommendation and reduced the default RPS (16,500 barrels within 72 hours, or 5,500 bopd) by 85% to 825 bopd, as Alaskan Crude had requested.

In its June 26 decision, the Commission also rejected Alaskan Crude's request that the Burglin 33-1 well be classified as a gas facility, "because there are signs of oil in the cores and the Ugnu and West Sak Formations are known to contain movable oil elsewhere on the North Slope." The Commission further determined, however, that "in accordance with AS 31.05.030(l) . . . it has been demonstrated with reasonable

---

[6]     AS 46.04.050(c).

[7]     *Id.*

certainty that exploratory or development wells drilled in this area will not encounter liquid hydrocarbon bearing sands in the Ugnu or West Sak Formation[s]."

**D. Alaskan Crude's Request For Reconsideration Of The June 26, 2007 Decision**

Alaskan Crude asked the Commission to reconsider its determination that the Burglin 33-1 well could not be classified as a gas facility, arguing that it had only applied for a permit to drill and test a gas well and the RPS requirements therefore should not have been considered relevant. The Commission granted reconsideration. It sent Alaskan Crude notice of a rehearing scheduled for September 6, 2007, published notice of the hearing, and requested comments from the public.

ADEC submitted its own comments to the Commission in advance of the hearing. It offered a revised interpretation of 18 AAC 75.430(c), which provides that "in no case will the department reduce the response planning standard below an amount equal to (1) 15 percent of the response planning standard applicable to . . . an exploration or production facility." ADEC had previously interpreted this provision "to mean that the lowest possible RPS volume for an exploration facility is 15 percent of 5,500 bopd, or 825 bopd." Now, however, the department interpreted the 15% limitation as applying only to any additional reductions granted after the RPS was set under 18 AAC 75.434(b). While this revised interpretation did not set a minimum RPS value, ADEC observed that as a general matter an RPS of zero would not be appropriate, since "routine spills" or other "emergency events, such as mechanical failures," could occur regardless of the likelihood of "a catastrophic well event," and an operator would be expected to be prepared for these other emergencies.

Alaskan Crude did not appear for the scheduled hearing.

### E.    Other Order 51

On October 1, 2007, the Commission issued Other Order 51. The Order confirmed the Commission's prior determination that the Burglin 33-1 well could not be classified as a gas facility, and it withdrew the Commission's earlier conclusion, stated in its June 26, 2007 letter, that " 'it has been demonstrated with reasonable certain[t]y that exploratory or development wells drilled in this area will not encounter liquid hydrocarbon bearing sands in the Ugnu or West Sak Formation[s].' "  Assuming that Alaskan Crude was requesting, as an alternative to the designation of the Burglin 33-1 well as a gas facility, a reconsideration of the RPS of 825 bopd, the Commission applied ADEC's amended interpretation of 18 AAC 75.430(c) and further reduced its RPS recommendation to 600 bopd for reentry of the Ugnu and West Sak formations.

### F.    Alaskan Crude's Request For Reconsideration Of Other Order 51 And Simultaneous Request For An Ugnu-Only RPS Recommendation

Alaskan Crude asked the Commission to reconsider Other Order 51 and also asked for a new RPS assessment that would apply only to the Ugnu formation. While acknowledging that its initial sundry application had indicated its intent to open the Burglin 33-1 well to a depth that included both the West Sak and Ugnu formations, Alaskan Crude now informed the Commission that it intended to submit a revised sundry application that would implicate Ugnu only.

On October 24, 2007, the Commission denied the request to reconsider Other Order 51 on grounds that Alaskan Crude had failed to identify any "ambiguities or errors in the order." The Commission did agree, however, to treat the request to reconsider as an application for an Ugnu-only RPS recommendation; five days later the Commission recommended 115 bopd for Alaskan Crude's Ugnu-only proposal,

notwithstanding the fact that the company had yet to submit its more limited sundry application.[8]

### G. Alaskan Crude's Appeals

Alaskan Crude appealed to the superior court, challenging both the Commission's well classification and its RPS recommendations. The superior court held that the Commission has the authority to determine whether a well is a "natural gas exploration facility" and affirmed the Commission's determination that the Burglin 33-1 well was not. The court also held that Alaskan Crude failed to present evidence "controverting the facially sufficient data upon which the [Commission] relied" in determining its RPS recommendations. The court declined to address Alaskan Crude's constitutional argument — that the State had violated article VIII, section 1 of the Alaska Constitution by failing to exempt low-volume oil wells from discharge prevention requirements[9] — on grounds that Alaskan Crude had neither raised the issue below nor created a factual record in support of it. The superior court awarded attorney's fees to the Commission.

Alaskan Crude appealed to this court, challenging the Commission's well classification and RPS recommendations and the superior court's award of attorney's fees. Alaskan Crude also argues that the Commission's decisions were arbitrary and capricious and failed to prevent waste.

---

[8]     The record does not disclose whether Alaskan Crude ever filed such an application.

[9]     Article VIII, section 1 of the Alaska Constitution provides: "It is the policy of the State to encourage the settlement of its land and the development of its resources by making them available for maximum use consistent with the public interest."

## III. STANDARD OF REVIEW

In an administrative appeal where the superior court has served as an intermediate court of appeal, "we independently review the merits of the agency's decision."[10] We review questions of law not involving agency expertise de novo.[11] "In questions of law involving the agency's expertise, a rational basis standard will be applied and we will defer to the agency's determination so long as it is reasonable."[12] We review the agency's factual findings using the substantial evidence standard.[13] "Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support [the agency's] conclusion."[14] "We determine only whether such evidence exists and do not choose between competing inferences or evaluate the strength of the evidence."[15]

"When the superior court acts as an intermediate appellate court, it has broad discretion to award reasonable attorney's fees . . . ."[16] An attorney's fees decision

---

[10]  *Powercorp Alaska, LLC v. State, Alaska Indus. Dev. & Exp. Auth.*, 171 P.3d 159, 163 (Alaska 2007).

[11]  *Alyeska Pipeline Serv. Co. v. DeShong*, 77 P.3d 1227, 1231 (Alaska 2003) (citing *DeYonge v. NANA/Marriott*, 1 P.3d 90, 94 (Alaska 2000); *Tesoro Alaska Petroleum Co. v. Kenai Pipe Line Co.*, 746 P.2d 896, 903 (Alaska 1987)).

[12]  *Id*. (citing *Tesoro Alaska Petroleum Co.*, 746 P.2d at 903).

[13]  *Id*. (citing *DeYonge*, 1 P.3d at 94).

[14]  *Lopez v. Adm'r, Pub. Emps.' Ret. Sys.*, 20 P.3d 568, 570 (Alaska 2001) (quoting *Hester v. State, Pub. Emps.' Ret. Bd.*, 817 P.2d 472, 476 (Alaska 1991)) (internal quotation marks omitted).

[15]  *Id.*

[16]  *Miller v. Matanuska-Susitna Borough*, 54 P.3d 285, 289 (Alaska 2002)

(continued...)

"should not be disturbed unless it is manifestly unreasonable."[17] This standard of review applies to the determination of the prevailing party as well as to the amount of the award.[18]

## IV. DISCUSSION

### A. The Commission Did Not Exceed Its Authority Or Err Factually In Determining That The Burglin 33-1 Well Is Not A Gas Facility.

In Other Order 51, the Commission affirmed its June 26, 2007 determination that the Burglin 33-1 well is not a gas facility for purposes of AS 46.04.050(c) and AS 31.05.030(*l*), the statutes exempting certain natural gas facilities from the oil-discharge prevention requirements. In challenging this finding, Alaskan Crude first argues that it is up to the operator, not the Commission, to determine whether a reopened well is an oil or gas facility. In the alternative, Alaskan Crude argues that the Commission erred when it declined to classify the Burglin 33-1 well as a gas facility.

#### 1. The Commission has the authority to classify the Burglin 33-1 well as an oil or gas facility.

As the superior court noted, Other Order 51 implicitly concluded that the Commission, not Alaskan Crude, had the authority to decide whether a reopened well is a gas well, an oil well, or both. But Alaskan Crude contends that the operator has

---

[16](...continued)
(citing *Rosen v. State Bd. of Pub. Accountancy*, 689 P.2d 478, 482 (Alaska 1984)).

[17]     *Id.* (quoting *Cook Inlet Pipeline v. Alaska Pub. Util. Comm'n*, 836 P.2d 343, 354 (Alaska 1992)) (internal quotation marks omitted).

[18]     *K & K Recycling, Inc. v. Alaska Gold Co.*, 80 P.3d 702, 721 (Alaska 2003) (citing *Tobeluk v. Lind*, 589 P.2d 873, 878 (Alaska 1979)).

discretion to decide how to classify a reopened well.[19] We review this question using our independent judgment.[20]

Alaskan Crude relies on 20 AAC 25.990(70) for the proposition that an operator may determine how to reenter a suspended well. The regulation provides: " 'suspend' means to plug a well in accordance with 20 AAC 25.110 and to reserve the option later to re-enter and (A) redrill the well; or (B) complete the well as an oil, gas, or service well."[21] While the regulation does reserve to the operator the options of reentering and redrilling the well or reentering and completing the well, we do not read it as extending to the operator the exclusive authority to determine how the well is to be classified on reentry, particularly as such a reading could severely limit the ability of the regulatory bodies to perform their statutory functions.

Neither AS 46.04.050(c) nor AS 31.05.030(*l*) explicitly grants the authority to determine a well's classification to the Commission or to the operator.[22] However,

---

[19] The Commission contends that Alaskan Crude's argument on this point is so cursory that it should be deemed waived. "Where a point is not given more than a cursory statement in the argument portion of a brief, the point will not be considered on appeal." *Wirum & Cash, Architects v. Cash*, 837 P.2d 692, 713-14 (Alaska 1992) (citing *State v. O'Neill Investigations, Inc.*, 609 P.2d 520, 528 (Alaska 1980); *Fairview Dev., Inc. v. City of Fairbanks*, 475 P.2d 35, 36 (Alaska 1970)). We do not find waiver, given that Alaskan Crude provided a legal theory in support of this argument and cited to a regulatory provision.

[20] *See Alaska Pub. Utils. Comm'n v. Municipality of Anchorage*, 902 P.2d 783, 785 (Alaska 1995) (citing *Tesoro Alaska Petroleum Co. v. Kenai Pipe Line Co.*, 746 P.2d 896, 903 (Alaska 1987)) (applying the substitution of judgment standard of review to the issue of whether the Alaska Public Utilities Commission has authority to order a refund, because it is a question of law not involving agency expertise).

[21] 20 AAC 25.990(70).

[22] AS 31.05.030(f) does provide that "[t]he commission may classify a well
(continued...)

we have held that other administrative agencies have implied powers, relying on the premise that implied powers are sometimes necessary to the exercise of those powers that the legislature has expressly granted.[23] In *Glacier State Telephone Co. v. Alaska Public Utilities Commission*, for example, we held that the Alaska Public Utilities Commission's powers to set rates and make regulations necessarily included the power to determine the methodology for computing revenue requirements.[24] In the instant case, AS 31.05.030(*l*) and AS 46.04.050(c) set out certain explicit powers of the Commission, including the power to determine whether a well at a natural gas exploration facility meets criteria that exempt it from oil discharge prevention requirements. As in *Glacier State*, the implied power that the Commission asserts — the power to determine what constitutes a natural

---

[22](...continued)
or a specific portion of a well as an exploratory, development, service, or stratigraphic test well and may classify a development well as an oil or gas well for purposes material to the interpretation or enforcement of this chapter." Whether the Commission may classify an *exploratory* well as an oil or gas well is not specifically addressed in the same statute. One could argue that the Commission therefore lacks such authority. *See State, Dep't of Revenue v. Deleon*, 103 P.3d 897, 900 (Alaska 2004) ("The principle of *expressio unius est exclusio alterius* directs the court to presume that a statute designating only certain powers excludes those not specifically designated . . . ." (citing *Croft v. Pan Alaska Trucking, Inc.*, 820 P.2d 1064, 1066 (Alaska 1991))). But the principle of *exclusio unius est exclusio alterius* does not apply if it would contravene the statute's purposes. *Ellingstad v. State, Dep't of Natural Res.*, 979 P.2d 1000, 1006 (Alaska 1999) (citing *Sonneman v. Hickel*, 836 P.2d 936, 939 (Alaska 1992)).

[23]     *Blanas v. Brower Co.*, 938 P.2d 1056, 1061-62 (Alaska 1997) (quoting *Greater Anchorage Area Borough v. City of Anchorage*, 504 P.2d 1027, 1033-34 (Alaska 1972)) (holding that the Alaska Worker's Compensation Board's express adjudicatory power implicitly and necessarily confers on it the "authority to set aside [a compromise and release] for fraud"). *See also, e.g.*, *Monzulla v. Voorhees Concrete Cutting*, 254 P.3d 341, 345-47 (Alaska 2011); *Wausau Ins. Cos. v. Van Biene*, 847 P.2d 584, 586-88 (Alaska 1993).

[24]     724 P.2d 1187, 1189-90 (Alaska 1986).

gas exploration facility in the first instance — is necessary to the furtherance of its express powers.

> **2. The Commission did not err in determining that the Burglin 33-1 well is not a gas facility.**

We next consider whether the Commission erred when in the exercise of its authority it determined that the Burglin 33-1 well is not a gas facility. Alaskan Crude focuses its argument on the question of whether movable oil in the underlying formations could flow unassisted to the surface. Alaska Statute 46.04.050(c) provides that "[f]or purposes of [the exemption], 'natural gas exploration facility' means a platform, facility, or structure that, except for storage of refined petroleum products in a quantity that does not exceed 10,000 barrels, is used solely for the exploration for natural gas." The determinative question is whether an operator will be using the facility to explore for oil as well as for gas; it is immaterial whether the oil is capable of flowing unassisted or can only be brought to the surface mechanically. During 2006 and the first part of 2007, Alaskan Crude repeatedly represented to the Commission and DNR that it planned to explore for oil. Even now, it asserts on appeal that when it decided to explore only for gas, it did so "knowing [it was] entitled to keep any oil [it] recover[ed]." There is substantial evidence in this history to support the Commission's conclusion that the Burglin 33-1 well is not a gas facility, as statutorily defined, because it was not to be used solely for gas exploration.

> **B. The Commission Did Not Err In Its RPS Recommendations.**

Alaskan Crude also contends that the Commission's setting of a response planning standard higher than zero bopd is in derogation of the finding in its June 26, 2007 letter that prior testing had not found oil capable of flowing unassisted to the

surface. Alaskan Crude argues that there was no basis for the Commission's successive RPS recommendations of 600 and then 115 bopd.[25]

We conclude that the Commission did not err. The Commission knew from past experience that parts of the West Sak formation had the capability of flowing oil to the surface unassisted. The Commission's analysis of testing data from the Burglin 33-1 well from the 1980s, "when combined with a reasonable set of rock and fluid properties from the Ugnu formation elsewhere on the North Slope," indicated that the Ugnu had the same capability. And it was also relevant that only a small portion of the Ugnu and West Sak formations had been tested for such capability; we cannot fault the Commission for caution.[26]

In Other Order 51, the Commission explained that its RPS recommendation of 600 bopd for a project implicating the Ugnu and West Sak formations was based on a software application analysis that incorporated average properties drawn from prior testing. To arrive at its 115 bopd flow rate analysis for the Ugnu-only proposal, the

---

[25] The Commission argues that this issue is not properly before the court, since it is ADEC, a non-party, that makes the final determination of an RPS; the Commission only makes recommendations. What the Commission provides, however, is not just a recommendation; it is also a technical assessment of potential flow rate, which should be subject to appellate review. The Commission also argues that this issue should be deemed waived due to inadequate briefing. We do not consider the issue to have been waived.

[26] Alaskan Crude also argues that the Commission and the superior court failed to resolve the question of "whether the mud logs and Halliburton tests show that the Ugnu formation at the interval Appellants sought to drill in the Application for Sundry Approvals was not capable of flowing oil to the surface." This question was resolved. Both the Commission and the superior court found that there was insufficient evidence to prove that the well would *not* flow to the surface, which was a sufficient justification for setting a non-zero RPS.

-13-                                                                6817

Commission also used an analysis of drill stem testing. The Commission's RPS recommendations were supported by substantial evidence.[27]

> **C.     Alaskan Crude Waived Its Arguments That The Commission's Decisions Were Arbitrary And Capricious And Violated The Alaska Constitution, Article VIII, Section 1.**

Alaskan Crude argues that the Commission's RPS recommendations were arbitrary and capricious. It also argues that the Commission, through the decisions that are before us on appeal, prevented exploration in violation of article VIII, section 1 of the Alaska Constitution.[28] These claims are waived, since Alaskan Crude failed to raise them below.[29] On the merits, Alaskan Crude's arguments are unpersuasive. Each shift in RPS recommendations was in response to — and largely accommodated — new

---

[27]     Alaskan Crude presents other evidence indicating that the formations are not capable of flowing oil to the surface. It points to DNR's assessment, in its approval of the Arctic Fortitude Unit, that "[n]one of the [prior] tests yielded hydrocarbons that would flow to the surface," and to the opinion of one of its consultants that there was a low risk of uncontrolled hydrocarbon flow. Under the substantial evidence standard, however, we "do not choose between competing inferences." *Lopez v. Adm'r, Pub. Emps.' Ret. Sys.*, 20 P.3d 568, 570 (Alaska 2001) (citing *Handley v. State, Dep't of Revenue*, 838 P.2d 1231, 1233 (Alaska 1992)). "[T]he existence of substantial evidence to support [appellant's] position does not in itself permit us to reverse the department's decision." *Anderson v. State, Dep't of Revenue*, 26 P.3d 1106, 1111 (Alaska 2001).

[28]     In its initial statement of points on appeal, Alaskan Crude also raised as an issue whether the Commission's actions "violated [Alaskan Crude's] right to procedural and substantive due process under the United States and Alaska Constitutions." We find this issue waived, since Alaskan Crude did not discuss it in the argument section of its brief. *See Wirum & Cash, Architects v. Cash*, 837 P.2d 692, 713-14 (Alaska 1992) (citing *State v. O'Neill Investigations, Inc.*, 609 P.2d 520, 528 (Alaska 1980); *Fairview Dev., Inc. v. City of Fairbanks*, 475 P.2d 35, 36 (Alaska 1970)).

[29]     "As a general rule, an issue that was not raised in the trial court will not be considered on appeal." *Pierce v. Pierce*, 949 P.2d 498, 500 (Alaska 1997).

requests from Alaskan Crude. And as discussed above, the Commission's flow rate assessments find adequate support in the record.

**D.      The Superior Court Did Not Err In Awarding Attorney's Fees To The Commission.**

The Commission initially claimed that it had incurred $439,849.89 in attorney's fees, but an amended motion reduced this amount to $84,322.50 and asked for an award of 20%, or $16,864.50. The superior court awarded $10,000.

Alaskan Crude first contests the superior court's determination that the Commission was the prevailing party. Alaskan Crude argues that it prevailed because "[a]t the time of the decision, the state had recognized the lowest RPS standard as at least theoretically zero barrels, as Appellant had requested."

"[T]he prevailing party to a suit is the one who successfully prosecutes the action or successfully defends against it, prevailing on the main issue, even though not to the extent of the original contention. He is the one in whose favor the decision or verdict is rendered and the judgment entered."[30] In the superior court, Alaskan Crude challenged the Commission's RPS recommendations and classification of the Burglin 33-1 well and raised a constitutional challenge to the relevant statutory framework. The superior court upheld the Commission's RPS recommendations and well classification and declined to reach the constitutional argument. Alaskan Crude clearly did not prevail on any of the main issues in the case.

We also find unpersuasive, for several reasons, Alaskan Crude's argument that it prevailed because during the course of agency proceedings ADEC recognized for the first time that an RPS could theoretically be set at zero. First, ADEC explained that it would be unrealistic in practice to set an RPS at zero, so the change in the agency's

---

[30]      *Carr-Gottstein Props. v. State*, 899 P.2d 136, 148 (quoting *Tobeluk v. Lind*, 589 P.2d 873, 876 (Alaska 1979)) (internal quotation marks omitted).

regulatory interpretation is not that significant. And second, even with the benefit of ADEC's changed interpretation, Alaskan Crude did not achieve its desired outcome on the RPS issue, as evidenced by this appeal.

Alaskan Crude also argues that the superior court's fees award was arbitrary and lacked explanation. When a superior court awards attorney's fees while acting as a court of appeal from the decision of an administrative agency, "ordinarily the award 'should only partially compensate the prevailing party . . . .' " for attorney's fees and be limited to attorney's fees incurred in court.[31] When awarding fees in an administrative appeal, "[t]he superior court need not explain its basis for awarding fees; it must only explain denials."[32]

Alaskan Crude's argument that the superior court erred by awarding fees "without substantial explanation" is thus without merit, given that the court ordinarily need not explain its awards at all. Furthermore, the superior court did provide some explanation for the award in this case: "The state expended enormous unfruitful time prior to the briefing in chief. The court estimates the appeal, which was fact-intensive but not particularly complex, could reasonably have been managed for $50,000, and so awards 20%." The court exercised its discretion in critically analyzing the time needed for the appeal and constructing its award accordingly.[33] The superior court only partially

---

[31]     *Kenai Peninsula Borough v. Cook Inlet Region, Inc.*, 807 P.2d 487, 501 (Alaska 1991) (citing Alaska R. App. P. 508(b), (c), (e); *McMillan v. Anchorage Cmty. Hosp.*, 646 P.2d 857, 867 (Alaska 1982); *State v. Smith*, 593 P.2d 625, 630-31 (Alaska 1979); *Kodiak W. Alaska Airlines, Inc. v. Bob Harris Flying Serv., Inc.*, 592 P.2d 1200, 1204-05 (Alaska 1979)).

[32]     *N. Slope Borough v. Barraza*, 906 P.2d 1377, 1382 (Alaska 1995) (citing *Rosen v. State Bd. of Pub. Accountancy*, 689 P.2d 478, 480 (Alaska 1984)).

[33]     *See Stosh's I/M v. Fairbanks N. Star Borough*, 12 P.3d 1180, 1186 (Alaska 2000) (concluding that the superior court acted within its discretion where "it properly

(continued...)

compensated the Commission, and the billing report that the court considered was restricted to the superior court appeal. The superior court's award of $10,000 in attorney's fees was not manifestly unreasonable and is therefore affirmed.[34]

## V. CONCLUSION

We AFFIRM the superior court's decision upholding the Commission's rulings with regard to well classification and RPS recommendations and AFFIRM the superior court's award of attorney's fees.

---

[33](...continued)
considered the number of hours spent by FNSB, reducing the award because the number of hours FNSB claimed to have spent on its case was disproportionate to its value").

[34]     Alaskan Crude also argues that there should have been a hearing on the first motion for attorney's fees so that it could cross-examine the attorneys who filed the Commission's affidavits, and that this court should consider whether the Commission's initial fees motion "present[ed] a pattern of unfair treatment of Appellant." Alaskan Crude offers no substantive support for these arguments, and we decline to consider them other than to note that ordinarily there is no right to a hearing on the issue of attorney's fees. *See Nat'l Bank of Alaska v. J. B. L. & K. of Alaska, Inc.*, 546 P.2d 579, 591 (Alaska 1976) (citing *Urban Dev. Co. v. Dekreon*, 526 P.2d 325, 329 (Alaska 1974)). *See also Wirum & Cash, Architects v. Cash*, 837 P.2d 692, 713-14 (Alaska 1992) ("Where a point is not given more than a cursory statement in the argument portion of a brief, the point will not be considered on appeal.") (quoting *State v. O'Neill Investigations, Inc.*, 609 P.2d 520, 528 (Alaska 1980); *Fairview Dev., Inc. v. City of Fairbanks*, 475 P.2d 35, 36 (Alaska 1970)).