NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

JAMES W. WHITE and ALASKAN ) 
CRUDE CORPORATION, ) Supreme Court No. S-15334
 )
Appellants, ) Superior Court No. 3AN-12-09087 CI
 )
v. ) MEMORANDUM OPINION
 ) AND JUDGMENT*
STATE OF ALASKA, )
DEPARTMENT OF NATURAL ) No. 1574 - March 16, 2016
RESOURCES, )
 )
Appellee. )

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Frank A. Pfiffner, Judge.

Appearances: James W. White, pro se, San Antonio, Texas, Appellant. Heather L. Gardner, Heather Gardner Attorney at Law LLC, Anchorage, for Appellant Alaskan Crude Corporation. Jeffrey D. Landry, Senior Assistant Attorney General, Anchorage, and Craig W. Richards, Attorney General, Juneau, for Appellee.

Before: Stowers, Chief Justice, Fabe, Winfree, Maassen, and Bolger, Justices.

---

\* Entered under Alaska Appellate Rule 214.

# I.      INTRODUCTION

The operators of an oil production unit entered into a development agreement with the Commissioner of the Department of Natural Resources. The operators ultimately defaulted on the agreement by failing to meet certain deadlines. In an earlier decision we affirmed the Department's finding of default and the Commissioner's proposed cure. After the operators failed to comply with the cure, the Commissioner terminated the unit, a decision the superior court affirmed.

The operators contend on appeal that the superior court erred because the Commissioner's decision to terminate the unit could have conflicted with the result of the operators' separate appeal of a spill response standard, which was then pending, and because the unit agreement's purpose was frustrated by the various conditions state agencies have placed on exploration and development. But because the operators' argument about possibly inconsistent rulings is moot, and because the operators failed to adequately brief their frustration of purpose argument, we affirm the decision of the superior court.

# II.      FACTS AND PROCEEDINGS

## A.      Administrative Setting

The Commissioner of the Department of Natural Resources (DNR) is empowered to lease state lands to private entities for oil and gas development.[1] Lessees seeking to develop "may unite with each other, or jointly or separately with others, in collectively adopting or operating under a cooperative or a unit plan of development or operation of the pool, field, or like area . . . when determined and certified by the

---

[1]      AS 38.05.180(d); *see* AS. 38.05.965(3) (" '[C]ommissioner' means the commissioner of natural resources").

commissioner to be necessary or advisable in the public interest."[2] "A unit agreement is a contract between the department and lessees that allows for the efficient development of a reservoir that underlies multiple leases owned by different lessees."[3]

Establishing a unit requires the Commissioner's approval.[4] The application for unit status must include a "plan of exploration" that describes "the applicant's proposed exploration activities . . . . All exploration operations must be conducted under an approved plan of exploration."[5] Once the application is approved, "[f]ailure to comply with any of the terms of an approved unit agreement, including any plans of exploration, development, or operations which are a part of the unit agreement, is a default under the unit agreement."[6]

When a default occurs, the Commissioner "give[s] notice to the unit operator . . . of the default. The notice will state the nature of the default and include a demand to cure the default by a specific date . . . not less than 90 days after the date of the commissioner's notice of default."[7] If the default is not cured, "the commissioner will, in his discretion, and after giving the unit operator . . . reasonable notice and opportunity

---

[2] AS 38.05.180(p).

[3] *Exxon Corp. v. State*, 40 P.3d 786, 788 (Alaska 2001).

[4] 11 Alaska Administrative Code (AAC) 83.306 (2005); *see also* 11 AAC 83.303 (2005) ("The commissioner will approve a proposed unit agreement for state oil and gas leases if he makes a written finding that the agreement is necessary or advisable to protect the public interest considering the provisions of AS 38.05.180(p) and this section."); 11 AAC 83.316 (2005) ("Unit approval.").

[5] 11 AAC 83.341 (2005).

[6] 11 AAC 83.374(a) (2005).

[7] 11 AAC 83.374(b).

to be heard, terminate the unit agreement."[8] Once the unit agreement is terminated, leases within the unit "may be continued in effect only in accordance with the terms and conditions of the lease, statutes and regulations, or as provided in the unit agreement."[9]

### B.    Facts

In 2006 Alaskan Crude Corporation and James W. White (collectively Alaskan Crude) entered into an agreement with the DNR to create the Arctic Fortitude Unit (the unit or AFU) on state lands White had leased in 1999. White's original leases were set to expire in 2006, but the unitization extended them.[10] Alaskan Crude's plan of exploration required, among other benchmarks, that it "move a drilling rig onto the Burglin 33-1 well pad and re-drill the well" by October 2007.[11]

Before exploration can commence under a unit agreement, the law requires that the operators have a separate "oil discharge prevention and contingency plan for the pipeline or facility" approved by the Alaska Department of Environmental Conservation (ADEC).[12] As part of this plan, ADEC assigns a "response planning standard" (RPS) — the amount of oil an operator must be readily able to contain and clean up in the event of

---

[8]    11 AAC 83.374(c).

[9]    11 AAC 83.336(d) (2005).

[10]    *See* AS 38.05.180(m) ("An oil or gas only lease shall be extended beyond its primary term if . . . the lease is committed to a unit approved by the commissioner").

[11]    *Alaskan Crude Corp. v. State, Dep't of Natural Res., Div. of Oil & Gas* (*Alaskan Crude I*), 261 P.3d 412, 416 (Alaska 2011). The Burglin 33-1 well had earlier been suspended. *Id.* at 416 n.13.

[12]    AS 46.04.030(b); *see* AS 46.04.900(6) (" '[D]epartment' means the Department of Environmental Conservation.").

an accidental discharge.[13]  Alaskan Crude objected to the RPS that ADEC initially assigned, arguing that it was unnecessarily high.[14]  Alaskan Crude asked the Alaska Oil and Gas Conservation Commission (the Conservation Commission), which advises ADEC on the response standards, to classify the well as a gas-only well; this would have exempted it entirely from the RPS requirement.[15]  Although the Conservation Commission refused this request, it did eventually recommend lowering the RPS significantly.[16]  Alaskan Crude appealed both the Conservation Commission's classification decision and the RPS recommendation to the superior court and ultimately to this court.[17]

While that appeal was pending, Alaskan Crude failed to comply with the exploration plan's requirement that it move a drilling rig to the Burglin 33-1 well.[18]  After extensive negotiations the Department agreed to extend the deadline to May 2008, with drilling to commence in October 2008.[19]  Alaskan Crude failed to meet the new deadline

---

[13]  *See* AS 46.04.030(k) (governing "[o]il discharge prevention and contingency plans" and requiring "response planning standards"); 18 AAC 75.434 (2005) ("Response planning standards for exploration or production facilities.").

[14]  *Alaskan Crude Corp. v. State, Alaska Oil & Gas Conservation Comm'n* (*Alaskan Crude II*), 309 P.3d 1249, 1252-53 (Alaska 2013).

[15]  *Id.*; *see also* 18 AAC 75.434(f)(2) ("The department may consult with the Alaska Oil and Gas Conservation Commission . . . as necessary to determine . . . a lower response planning standard for exploration facilities."); AS 46.04.050(c) (exempting a "natural gas exploration facility" from planning provisions).

[16]  *Alaskan Crude II*, 309 P.3d at 1252-53.

[17]  *Id.* at 1253-54.

[18]  *Alaskan Crude I*, 261 P.3d 412, 415-16 (Alaska 2011).

[19]  *Id.* at 416.

as well, asserting that its dispute over the RPS constituted a force majeure that excused its performance.[20] But the Commissioner concluded otherwise and found Alaskan Crude in default.[21] The Commissioner required that Alaskan Crude cure the default by moving a drilling rig to the Burglin 33-1 well by March 31, 2009, and re-drilling the well by October 1 of that year.[22]

Alaskan Crude appealed the Commissioner's default decision and proposed cure to the superior court and then to this court, and in 2011 we affirmed the Commissioner's decisions.[23] We found that Alaskan Crude's pending appeal of the RPS did not constitute a force majeure and that the company was therefore in default;[24] we also affirmed the Commissioner's proposed cure as "in accordance with the unit agreement" and "not a unilateral amendment of the agreement."[25]

## C. Proceedings

After we issued our opinion in *Alaskan Crude I* — two years after the 2009 cure deadline had passed — the Department sent Alaskan Crude notice of an opportunity to be heard for its failure to cure the default, warning that among the remedies available to the Department was "unit termination." Alaskan Crude asserted in response that the

---

[20]    *Id.* at 416-17.

[21]    *Id.* at 418.

[22]    *Id.* Notably, "the dates demanded [for cure] by the DNR Commissioner were the same dates proposed by Alaskan Crude in its additional requests to amend the plan of exploration on April 24 and May 5, 2008"; we therefore observed that the cure we affirmed on appeal "had the practical effect of granting Alaskan Crude's own request." *Id.* at 422.

[23]    *Alaskan Crude I*, at 412, 422.

[24]    *Id.* at 420-21.

[25]    *Id.* at 422.

pendency of the RPS appeal prohibited termination of the unit. Alaskan Crude "propose[d] that the appropriate remedy . . . [was instead] to permit White to re-enter the Burglin 33-1 well in the 2012-2013 drilling season."

The Commissioner decided, however, that "[g]iven the record here, coupled with your longstanding failure to abide by work commitments, I have no reason to believe that further extensions of [Alaskan Crude's] AFU obligations will result in any activity by the company in the AFU" and terminated the unit.[26] Termination of the unit also terminated White's underlying leases, which absent unitization would have expired in 2006.[27] Alaskan Crude appealed to the superior court, which affirmed the Commissioner's decision "[b]ecause it was indisputable that there had been a default, and [because Alaskan Crude's] justifications for default" — its force majeure argument — "had already been dismissed by the Alaska Supreme Court" in *Alaskan Crude I*.[28] The

---

[26] *See* 11 AAC 83.374(c) ("If a default occurs with respect to a unit in which there is no well capable of producing oil or gas in paying quantities and the default is not cured by the date indicated in the demand, the commissioner will, in his discretion, and after giving the unit operator and defaulting party (if other than the unit operator) reasonable notice and opportunity to be heard, terminate the unit agreement by mailing notice of the termination to the unit operator and defaulting party. Termination is effective upon mailing the notice.").

[27] *See* 11 AAC 83.336(d) ("Upon termination of a unit, each lease or portion of a lease committed to the unit may be continued in effect only in accordance with the terms and conditions of the lease, statutes and regulations, or as provided in the unit agreement.").

[28] *Alaskan Crude Corp. v. State, Dep't of Nat. Res.*, 3AN-12-09087 CI at 4-5 (Alaska Super., Aug. 30, 2013).

superior court also noted that we had decided Alaskan Crude's RPS appeal in an opinion issued earlier the same day, rejecting Alaskan Crude's arguments.[29]

Alaskan Crude now appeals the superior court's decision affirming the Commissioner's decision to terminate the unit. It argues that the Commissioner should not have terminated the unit while the RPS appeal was pending, because a result favorable to Alaskan Crude on the RPS issue would have conflicted with unit termination. It also argues that "[t]he express purpose of the [unit] was frustrated by the changes made to the drilling conditions that were the subject of the earlier appeals." Finally, it asserts that the superior court failed to "provide adequate findings [of fact] and conclusions" of law in its decision upholding the Commissioner's decision.

## III. STANDARDS OF REVIEW

"In an administrative appeal where the superior court has served as an intermediate court of appeal, 'we independently review the merits of the agency's decision.' "[30] "Mootness is a matter of judicial policy and its application is a question of law."[31] Also, "[w]hether res judicata applies is a question of law that we review de novo."[32]

---

[29]     *Id.* at 2; *see Alaskan Crude II*, 309 P.3d 1249, 1256 (Alaska 2013).

[30]     *Id.* at 1254 (quoting *Powercorp Alaska, LLC v. State, Alaska Indus. Dev. & Exp. Auth.*, 171 P.3d 159, 163 (Alaska 2007)).

[31]     *In re Dakota K.*, 354 P.3d 1068, 1070 (Alaska 2015) (quoting *In re Joan K.*, 273 P.3d 594, 595-96 (Alaska 2012)).

[32]     *Patterson v. Infinity Ins. Co.*, 303 P.3d 493, 497 (Alaska 2013) (quoting *Smith v. CSK Auto, Inc.*, 132 P.3d 818, 820 (Alaska 2006)).

## IV.    DISCUSSION

### A.    Alaskan Crude's Argument That To Avoid Inconsistent Rulings The Commissioner Should Not Have Terminated The Unit While The RPS Was On Appeal Is Moot.

Alaskan Crude first argues that the Commissioner erred in terminating the unit because the company was "still in the process of arguing on appeal" that the RPS recommended by the Conservation Commission was "not based upon objective review of the specific characteristics of the Burglin 33-1 well," and Alaskan Crude could not commence exploration while "the [S]tate denied [Alaskan Crude] the ability to enter the leases in a cost effective manner." It argues that if the RPS appeal had been resolved in its favor, this "would have created a conflict between the termination of the unit and an agency remand from the Alaska Supreme Court that revived the lease(s) underlying the unit."

But even if Alaskan Crude's argument otherwise had merit, it is moot. The RPS appeal was resolved against Alaskan Crude; in *Alaskan Crude II* we affirmed both the Conservation Commission's RPS recommendation and its decision not to classify the Burglin 33-1 well as a gas-only well exempt from the RPS requirements.[33] Nothing about our opinion can be read as resurrecting either the unit or the underlying leases. There is no longer even the possibility that Alaskan Crude's hypothetical conflict between termination of the unit and a favorable ruling on the RPS issues will arise. Because events have rendered this issue moot, we decline to consider it.[34]

---

[33]    *Alaskan Crude II*, 309 P.3d at 1256.

[34]    "We generally will not consider questions where events have rendered the legal issue moot." *Alaska Cmty. Action on Toxics v. Hartig*, 321 P.3d 360, 366 (Alaska 2014) (quoting *Copeland v. Ballard*, 210 P.3d 1197, 1201-02 (Alaska 2009)).

**B.     Alaskan Crude's Frustration Of Purpose Argument Is Waived.**

Alaskan Crude next argues that "[t]he express purpose of the [unit] was frustrated by the changes made to the drilling conditions that were the subject of the earlier appeals[.]"  To the extent Alaskan Crude argues that these drilling conditions constituted "an artificial and irrational economic barrier to exploration," we rejected that argument in Alaskan Crude's two prior appeals; in both of them we upheld the decisions of the DNR Commissioner and the Conservation Commission with regard to the requirements for exploration and development.[35]  The doctrine of res judicata precludes Alaskan Crude from again challenging the legality of these agency decisions.[36]

Furthermore, we need not decide whether lawful "drilling conditions" on Alaskan Crude's performance can support a "frustration of purpose" defense.[37]  Parties

---

[35]     *Alaskan Crude II*, 309 P.3d at 1254-57 (affirming the Conservation Commission's decision not to reclassify Burglin 33-1 as a gas-only well and its recommended RPS for the well); *Alaskan Crude I*, 261 P.3d 412, 419-22 (Alaska 2011) (affirming the DNR Commissioner's decisions that the RPS dispute was not a force majeure and imposing a cure for Alaskan Crude's default).

[36]     Under the doctrine of res judicata, "a final judgment in a prior action bars a subsequent action if the prior judgment was (1) a final judgment on the merits, (2) from a court of competent jurisdiction, (3) in a dispute between the same parties (or their privies) about the same cause of action." *Plumber v. Univ. of Alaska Anchorage*, 936 P.2d 163, 166 (Alaska 1997) (citing *Blake v. Gilbert*, 702 P.2d 631, 634-35 (Alaska 1985), *overruled on other grounds by Bibo v. Jeffrey's Restaurant*, 770 P.2d 290 (Alaska 1989)).

[37]     As a defense to contract enforcement, "[f]rustration of purpose is applicable where 'parties enter into a contract on the assumption that some particular thing essential to its performance will continue to exist and be available for the purpose and neither agrees to be responsible for its continued existence and availability.' " *Gold Dust Mines, Inc. v. Little Squaw Gold Mining Co.*, 299 P.3d 148, 160-61 (Alaska 2012) (emphasis omitted) (quoting *Parrish v. Stratton Cripple Creek Mining & Dev. Co.*, 116 F.2d 207, 209-10 (10th Cir. 1940)) (citations and emphasis omitted).

waive or abandon issues when they fail to include them in their points on appeal or to adequately brief them.[38] Alaskan Crude did not mention frustration of purpose in its points on appeal. And though a section of its opening brief is entitled, "The express purpose of the [unit] was frustrated by the changes made to the drilling conditions that were the subject of the earlier appeals," the ensuing discussion makes only conclusory statements of fact and fails to cite any law.[39] We deem the argument waived.[40]

## C. Alaskan Crude's Challenge To The Adequacy Of The Superior Court's Decision Is Irrelevant To This Appeal.

Finally, Alaskan Crude argues that the superior court's decision on appeal — "a scant five paragraphs" — failed to "provide adequate reasoning to support affirming the Commissioner's decision to terminate the unit." We find the superior court's decision concise and clearly reasoned. Regardless, that decision's adequacy is irrelevant to our

---

[38] *Alaska Cmty. Action on Toxics v. Hartig*, 321 P.3d 360, 371-72 (Alaska 2014); *Braun v. Alaska Commercial Fishing and Agric. Bank*, 816 P.2d 140, 145 (Alaska 1991).

[39] The appellants' opening brief was filed by their counsel. A reply brief filed by White, acting pro se, expands on the factual basis for Alaskan Crude's frustration of purpose defense, but again it does so without citation to the record or any significant discussion of the applicable law. Besides, when an argument is waived because it is inadequately developed in an opening brief, "[s]uch a waiver is not correctable by arguing the issue in a reply brief." *Adamson v. Univ. of Alaska*, 819 P.2d 886, 889 n.3 (Alaska 1991).

[40] *See Manning v. State, Dep't of Fish & Game*, 355 P.3d 530, 538 (Alaska 2015) (holding that "because [the appellant's] arguments on these points are conclusory and inadequately developed, we consider them waived"). Alaskan Crude also makes passing reference to constitutional arguments, contending that "[t]he agency has deprived Appellants of their contractual and property rights under the unit agreement" and that there was "an ongoing violation of due process stemming from the controversies that have impeded Appellants from exploring the unit and its leases since 2007." These undeveloped arguments are also waived for lack of briefing.

review: "When the superior court acts as an intermediate appellate court in an administrative matter, we independently review the merits of the administrative decision."[41] To the extent Alaskan Crude intends to attack the adequacy of the underlying agency decision — by referring to its two-page length and "summary" nature — any such argument is entirely undeveloped and accordingly waived.

## V.  CONCLUSION

We AFFIRM the superior court's decision affirming the Commissioner's decision to terminate the unit.

---

[41]  *Alaskan Crude I*, 261 P.3d 412, 418-19 (Alaska 2011) (quoting *Button v. Haines Borough*, 208 P.3d 194, 200 (Alaska 2009)).