Tom COPELAND and Riki
Ott, Appellants,

v.

Ernesta BALLARD, Commissioner, Department of Environmental Conservation, State of Alaska; British Petroleum Oil Shipping Co.; SeaRiver Maritime, Inc.; Alyeska Pipeline Service Co.; Tom Lakosh, Appellees.

No. S–12648.

Supreme Court of Alaska.

June 26, 2009.

Nancy S. Wainwright, Law Offices of Nancy S. Wainwright, Anchorage, for Appellants.

Jennifer L. Schorr, Assistant Attorney General, Anchorage, and Talis J. Colberg, Attorney General, Juneau, for Appellee State of Alaska.

Kevin Callahan, Patton Boggs, LLP, Anchorage, for Appellee SeaRiver Maritime, Inc.

Michael W. Seville, Burr, Pease & Kurtz, Anchorage, for Appellees BP Oil Shipping Co. USA, Alaska Tanker Co., LLC, Polar Tankers, Inc., and Tesoro Alaska Shipping Co., Inc.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, CARPENETI, and WINFREE, Justices.

## OPINION

WINFREE, Justice.

## I. INTRODUCTION

Two Cordova residents intervened in the administrative appeal of an agency decision approving contingency plans for various oil shipping entities, but then were dismissed from the proceedings for failure to pay record costs. The intervenors appealed to the superior court, which affirmed the agency decision. Although the underlying proceedings have been completed and the appeal to this court is technically moot, due process questions raised by the intervenors fall within the public interest exception to mootness, and we address those issues.

We generally, but with some caveats, affirm the superior court's decision to uphold the agency's: (1) interpretation of its regulation allowing it to charge a copying fee for the initial production of the record; (2) interpretation of the term "pro rata" for purposes of charging for the compilation of the record; (3) advance payment requirement; and (4) timeliness in producing the record. But we reverse in part the decision of the superior court and hold that the agency's: (1) practice of denying litigants access to the agency record prior to its certification violates due process; and (2) dismissal of the intervenors from the administrative appeal was an abuse of agency discretion.

## II. FACTS AND PROCEEDINGS

Companies operating in many facets of the oil industry—shipment, exploration, production, or transfer—must submit oil discharge prevention and contingency plans to the State of Alaska, Department of Environmental Conservation (DEC) on a regular basis.[1] Contingency plans are "plans to prevent, contain, and clean up oil spills from oil tank vessels, offshore oil exploration or production facilities, and large oil terminal facilities."[2] DEC reviews and then approves contingency

plans if they are consistent with statutory and regulatory requirements.[3]

Tom Lakosh appealed DEC's approvals of three separate contingency plans for oil tankers and shipping entities operating in and around Valdez; the three appeals were consolidated into a single proceeding. Tom Copeland and Riki Ott moved to intervene in Lakosh's appeal of DEC's approval of the Trans–Alaska Pipeline System tanker discharge prevention and contingency plans ("TAPS Tanker C–Plan") but did not move to intervene in Lakosh's other two appeals of contingency plan approvals.[4] In June 2003 DEC Commissioner Ernesta Ballard granted the intervention motion, stating that Copeland and Ott "are now considered parties to the proceeding I granted to Mr. Lakosh on February 21, 2003," and that Lakosh, Copeland, and Ott each would be responsible for paying one-third of the record costs.

Copeland, Ott, Lakosh, and DEC negotiated the preparation and certification of the administrative record over the next nine months. DEC provided several different cost estimates for record preparation, ranging from $1,270 to $2,843. Negotiations culminated in a January 2004 order from the Commissioner that Copeland, Ott, and Lakosh must pay the record costs (choosing one of several options) by February 13, 2004, or face dismissal.

On February 10 Lakosh submitted payment for his share of the record costs. On February 12 Copeland and Ott submitted a letter to the Commissioner with questions and objections to the record preparation process. The Commissioner did not respond. On February 20 DEC's counsel gave Copeland and Ott notice of revised cost estimates for the record preparation.

The Commissioner dismissed Copeland and Ott from the appeal on March 2 for nonpayment. Copeland and Ott then requested

---

1. AS 46.04.030.

2. *Lakosh v. Alaska Dep't of Envtl. Conservation,* 49 P.3d 1111, 1113 n. 2 (Alaska 2002).

3. AS 46.04.030.

4. The TAPS Tanker C–Plan record involved the applications of Tesoro, Chevron, Alaska Tanker Co., SeaRiver Maritime, and Polar Tankers, collectively called Prince William Sound Tankers. Lakosh's other two appeals were of Western Pioneer and Valdez Marine Terminal's contingency plans.

reconsideration of the dismissal and submitted a check for their two-thirds portion of the February 20 estimated record preparation costs under one of the options set forth in the Commissioner's January 2004 order. The Commissioner returned the check and affirmed Copeland and Ott's dismissal from the appeal.

Copeland and Ott appealed to superior court, arguing that the Commissioner violated their due process rights when she dismissed them from the administrative appeal. The superior court concluded that Copeland and Ott's due process rights had not been violated and affirmed their dismissal from the administrative appeal proceeding. Copeland and Ott now appeal the superior court's decision and its award of attorney's fees and other costs to DEC.

Lakosh ultimately abandoned his appeal. The disputed contingency plans expired and DEC approved new contingency plans.

## III. STANDARD OF REVIEW

In this case the superior court acted as an intermediate appellate court, and we therefore "independently review the merits of [the] administrative determination."[5] We review questions of mootness under the "independent judgment standard."[6] Dismissals of administrative appeals for failure to prosecute are generally reviewed under the abuse of discretion standard.[7] However we use our "independent judgment when reviewing a lower court's interpretation of statutes and other related legal questions, and when de-

termining whether a party's procedural due process rights have been violated."[8]

## IV. DISCUSSION

Copeland and Ott claim that DEC violated the due process clause of the Alaska Constitution[9] by dismissing them from the administrative appeal. "[P]rocedural due process under the state constitution requires 'notice and opportunity for hearing appropriate to the nature of the case.'"[10] Due process includes the right to a neutral and unbiased decision-maker who presides over proceedings that are fair and that have the appearance of fairness.[11] Copeland and Ott contend that DEC's actions were arbitrary, biased, and unfair, culminating in three specific due process violations: (1) arbitrary denial of access to the record and delay in preparation of the record; (2) arbitrary apportionment of the record costs; and (3) unconstitutional imposition of a litigation-ending sanction.

We first address whether Copeland and Ott's claims are, as DEC and the shipping companies argue, moot.

### A. This Appeal Satisfies the Public Interest Exception to the Mootness Doctrine, and We Will Consider Its Merits.

We generally will not consider questions "where events have rendered the

---

**5.** *Bruner v. Petersen*, 944 P.2d 43, 47 n. 5 (Alaska 1997).

**6.** *Akpik v. State, Office of Mgmt. & Budget*, 115 P.3d 532, 534 (Alaska 2005) ("We apply our independent judgment in determining mootness because, as a matter of judicial policy, mootness is a question of law.").

**7.** *Baker v. Univ. of Alaska*, 22 P.3d 440, 442 (Alaska 2001).

**8.** *Paxton v. Gavlak*, 100 P.3d 7, 10 (Alaska 2004) (internal citations omitted).

**9.** Alaska Const. art. I, § 7 ("No person shall be deprived of life, liberty, or property, without due process of law.").

**10.** *Carvalho v. Carvalho*, 838 P.2d 259, 262 (Alaska 1992) (quoting *Aguchak v. Montgomery Ward Co.*, 520 P.2d 1352, 1356 (Alaska 1974)).

**11.** *State v. Lundgren Pac. Constr. Co.*, 603 P.2d 889, 895–96 (Alaska 1979). We will review administrative proceedings to:

> [A]ssure that the trier of fact was an impartial tribunal, that no findings were made except on due notice and opportunity to be heard, that the procedure at the hearing was consistent with a fair trial, and that the procedure was conducted in such a way that there is an opportunity for a court to ascertain whether the applicable rules of law and procedure were observed.

*Robles v. Providence Hosp.*, 988 P.2d 592, 596 (Alaska 1999) (quoting *In re Hanson*, 532 P.2d 303, 305 (Alaska 1975) (internal quotation marks omitted)).

legal issue moot." [12] A claim is moot if it is no longer a "present, live controversy" or if the court system cannot provide the relief the claimant seeks.[13] We have previously found cases moot when agency-issued permits had expired but the permit opponents still sought declaratory judgment that the agency actions were unlawful.[14] We have emphasized that "[m]ootness is particularly important in a case seeking a declaratory judgment because there is an added risk that the party is seeking an advisory opinion." [15] Our decision in *Kodiak Seafood Processors Association* makes clear that when—as in this case—the challenge is to the procedures used by the agency and the relief sought is a declaratory judgment, the claim is technically moot if the underlying permit has expired.[16]

■ There are exceptions to the general rule that we will not hear cases that are moot.[17] The public interest exception requires considering and weighing three factors: "(1) whether the disputed issues are capable of repetition, (2) whether the mootness doctrine, if applied, may cause review of the issues to be repeatedly circumvented, and (3) whether the issues presented are so important to the public interest as to justify overriding the mootness doctrine." [18]

■ As to the first prong of this test, Copeland and Ott claim that agency regulations, as applied, violate the due process

clause of the Alaska constitution and that this violation is capable of repetition because "DEC has consistently applied and interpreted its regulations incorrectly and arbitrarily." We accept this as sufficient for the first prong of the public interest exception to mootness.

We have previously analyzed the second prong—whether an issue is likely to repeatedly evade review—by comparing the time it takes to bring the appeal with the time it takes for the appeal to become moot.[19] We have also emphasized that if the appeal involves a threshold issue or agency interpretation of law, we will view this requirement of the public interest exception more leniently.[20] Current contingency plans have a five-year life span.[21] The appeal in this case, which began in November 2002, demonstrates that it is unreasonable to assume an opponent to an approved contingency plan would be able to appeal the agency decision within the five-year duration of the plan. Copeland and Ott also raise threshold questions about the production of the agency record and agency interpretations of law that could deter future litigants. This satisfies the second prong of the public interest exception to mootness.

The third prong of the public interest exception requires a showing that "the issues presented are so important to the public interest as to justify overriding the mootness

**12.** *Kodiak Seafood Processors Ass'n v. State,* 900 P.2d 1191, 1195 (Alaska 1995).

**13.** *Ulmer v. Alaska Rest. & Beverage Ass'n,* 33 P.3d 773, 776 (Alaska 2001) (quoting *Gerstein v. Axtell,* 960 P.2d 599, 601 (Alaska 1998)).

**14.** *See, e.g., State, Dep't of Natural Res. v. Greenpeace, Inc.,* 96 P.3d 1056, 1068 (Alaska 2004); *Kodiak Seafood Processors,* 900 P.2d at 1196.

**15.** *Kodiak Seafood Processors,* 900 P.2d at 1195.

**16.** *Id.* at 1194–95.

**17.** *See, e.g., Fairbanks Fire Fighters Ass'n, Local 1324 v. City of Fairbanks,* 48 P.3d 1165, 1168 (Alaska 2002).

**18.** *Kodiak Seafood Processors,* 900 P.2d at 1196.

**19.** *E.g., Ulmer,* 33 P.3d at 778 ("Although such appeals typically must be decided by election day to avoid becoming moot, there is no reason to

believe that we cannot resolve such appeals in a timely fashion. Indeed, we have frequently done that.") (internal citations omitted).

**20.** *Fairbanks Fire Fighters Ass'n, Local 1324,* 48 P.3d at 1168 ("Arbitrability is a threshold question; thus, the harm is caused by the means of resolution and not the resolution itself. Therefore, we find that this requirement [that the issue continually evade review] is met."); *Alaska Ctr. for the Env't v. Rue,* 95 P.3d 924, 930 (Alaska 2004) ("[D]enying review based on mootness seems likely to hamper or delay future review of this issue: even if forceful new evidence of threatened extinction arises, the commissioner's current position may well discourage new petitions and will likely prevent any realistic possibility of endangered-species listing.").

**21.** *See* Dep't of Envtl. Conservation, Approval Notice of Alaska Tanker Company, LLC Integrated Vessel Response Plan, October 31, 2007 (stating that approval for the plan will expire as of November 1, 2012).

doctrine."[22] We have found this prong met when the case involved "concepts of fairness underlying the right to procedural due process,"[23] the preservation of clean water,[24] or "situations, otherwise moot, where the legal power of public officials was in question."[25] This case involves two matters fundamental to the public interest. The first is approval of contingency plans to protect Alaska's marine and coastal environments in the event of an oil spill, and given the potentially devastating effects of oil spills on the ecology and economy of the state, this is a matter of utmost importance to the public interest. The second is an administrative procedures challenge grounded in the due process clause, and given the need for transparency in governance and access to administrative records, this also is a matter of importance to the public interest. This case meets the requirements of the third prong of the public interest exception to mootness.

We therefore address the merits of Copeland and Ott's due process claims.

## B. Due Process Requires that Litigants Be Allowed Agency Record Access.

Alaska's Public Records Act[26] codifies the common law rule that "every interested person [is] entitled to the inspection of public records," although it perhaps eliminates the requirement that the person inspecting records be "interested."[27] But the Act creates an exception to the general policy of unencumbered access to public records for those records "used for, included in, or relevant to litigation"[28] and provides that "with respect to a person involved in litigation, the records shall be sought in accordance with the rules of procedure applicable in a court or an administrative adjudication."[29] DEC argues that 18 Alaska Administrative Code (AAC) 15.237(b) requires the agency to notify parties, when the record has been certified as complete, that they may have access to it and therefore that this regulation "make[s] clear that the record was required to be certified before Mr. Copeland and Ms. Ott could access it."[30] Copeland and Ott argue that this regulation, made applicable through AS 40.25.122,[31] unconstitutionally denied them access in violation of their due process rights.[32]

When assessing whether an administrative action violates the due process clause of the Alaska Constitution, we use the framework established by the United States

---

22. *Kodiak Seafood Processors*, 900 P.2d at 1196.

23. *Greenpeace*, 96 P.3d at 1062–63.

24. *Id.*

25. *Fairbanks Fire Fighters Ass'n*, 48 P.3d at 1169 (citing *Legislative Council v. Knowles*, 988 P.2d 604, 606–07 (Alaska 1999)); *see also Kodiak Seafood Processors Ass'n*, 900 P.2d at 1196 ("[T]he scope of the Commissioner's power is an issue of public interest.").

26. AS 40.25.110–.295.

27. *City of Kenai v. Kenai Peninsula Newspapers, Inc.*, 642 P.2d 1316, 1319–20 (Alaska 1982) (internal citations omitted).

28. AS 40.25.122.

29. *Id.* This provision implies that the agency must develop regulations to govern access to the record by the litigating parties. Both parties point to 18 AAC 15.237 as the DEC regulation governing access to the record by litigating parties.

30. 18 AAC 15.237(b) states:

 Within thirty days after the expiration ... of the time for intervention ... the manager for the department program involved in the contested decision shall certify the agency decision record as complete. The program manager shall at the same time also serve notice on all parties that the agency decision record is available for inspection and copying at the requesting party's expense.

31. AS 40.25.122 refers to the "rules of procedure applicable in a court or an administrative adjudication."

32. We have previously noted that the litigation exception of the Act somewhat inexplicably "limits access to otherwise public records." *Brady v. State*, 965 P.2d 1, 18 (Alaska 1998). We have also noted that an equal protection challenge to this statute might prevail. *Id.* at 19–20 (noting that equal protection challenge to AS 09.25.122, now re-numbered as AS 40.25.122, is plausible, but holding the plaintiff in that case had waived the argument). Because Copeland and Ott do not raise these arguments, we do not consider them here.

Supreme Court in *Mathews v. Eldridge*.[33] We weigh: (1) the private interest at stake; (2) "the risk of an erroneous deprivation" of the private interest and the value of additional safeguards; and (3) the government interest—noting particularly the cost and "administrative burdens" entailed by additional procedural protections.[34] In this case we have no trouble concluding that the agency's denial of access to the record violated due process.

The regulation's effect is to prevent access to the record prior to certification. As litigants, Copeland and Ott have a strong interest in accessing the record—it is the platform upon which they must build their case. Access to the record is also important when the parties attempt to negotiate a limited record for review in order to control costs, as they did here. DEC has offered no valid governmental interest in denying access, asserting only that: (1) the parties all had access to the record when they participated in the plan review process; (2) most of the record is irrelevant; and (3) the documents were publicly available during plan review—a statement that Copeland and Ott dispute. Although these assertions suggest that the burden of 18 AAC 15.237(b) may not be great, they do not explain the government's interest in placing any burden whatsoever on accessing the record. Because Copeland and Ott's interests are significant and because DEC has provided no countervailing inter-

ests, we hold that the regulation violates the due process clause of the Alaska Constitution.

**C. When Litigants Are Required To Pay Record Costs in Advance, Due Process Requires Clear and Accurate Cost and Time Estimates and an Explanation of How Estimates Were Calculated.**

18 AAC 15.237(c) permits the agency to require advance payment of costs.[35] This does not on its face offend the due process clause of the Alaska Constitution, but Copeland and Ott have argued that the agency acted arbitrarily by: (1) issuing conflicting cost estimates; (2) presenting varying estimates of the pages in the record; and (3) arbitrarily apportioning record costs among the parties.

 We recognize that an agency often will be able to provide only an estimate of record preparation costs, given the size and complexity of many administrative records. In this case DEC counsel was careful to explain the method of calculation as estimates of the length of the record and the costs changed.[36] We nevertheless note that when an agency requires advance payment, it would be arbitrary not to provide an accurate and prompt estimate of cost and size of the record as well as an explanation of how each estimate was calculated. If the cost of the record is being shared by multiple parties,

**33.** *City of Homer v. State, Dep't of Natural Res.*, 566 P.2d 1314, 1319 (Alaska 1977) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 334–35, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976)).

**34.** *Id.*

**35.** 18 AAC 15.237(c) provides:
The requestor shall pay the cost of gathering and certifying the agency decision record, including the reasonable cost of transcription of the tapes of any public hearing or other permit conference. If more than one requestor are parties, each requestor shall bear, on a pro-rata basis, the cost of gathering and certifying the agency permit record, unless the hearing officer grants another percentage allocation among the requestors. The department may require advance payment of the costs of gathering and certifying the record as reasonably estimated by the department. If the department requires advance payment, the cost of gathering and certifying the agency decision

record must be paid before any further proceedings under this chapter. The department will waive all or part of the cost of gathering and certifying the record if the requestor demonstrates, to the department's satisfaction, an inability to pay those costs.

**36.** We note that Copeland and Ott have also argued that DEC counsel played a dual role: custodian of the records and counsel to DEC. Absent a showing of bias, this dual role does not violate due process. *See Bruner*, 944 P.2d at 49; *Stigall v. Anchorage Mun. Police & Fire Ret. Bd.*, 718 P.2d 943, 946 (Alaska 1986); *Amerada Hess Pipeline Corp. v. Alaska Pub. Util. Comm'n*, 711 P.2d 1170, 1180 (Alaska 1986). Administrative agency personnel are presumed impartial unless a party shows actual bias. *AT & T Alascom v. Orchitt*, 161 P.3d 1232, 1246 (Alaska 2007). Here Copeland and Ott have shown no evidence of bias on the part of DEC counsel.

the agency should also explain its method of apportioning costs. Here the agency followed 18 AAC 15.237(c)'s direction for pro rata cost-sharing but did not explain how it applied this method to the three consolidated appeals when Copeland and Ott were participating in only one of the three appeals. The agency erred by not explaining this aspect of its calculations.

■ Copeland and Ott also argue that the agency's interpretation of 18 AAC 15.237(c) is erroneous, as the agency interprets that regulation to include copying costs as part of the costs of "gathering and certifying" the record. We hold that the agency's interpretation of the term "gathering and certifying" to include photocopying the record to create a master copy is reasonable.

■ Finally, Copeland and Ott argue that the agency's delay in preparing and certifying the record violated due process. We agree that an agency's unreasonable delay in preparing and certifying the record may violate a litigant's due process rights. We also agree that an agency must be mindful of the implications of a delayed record and take reasonable steps to provide due process to an agency litigant. The delay in this case, however, was not attributable only to the agency, and it did not reach constitutional proportions.

### D. Dismissal of Copeland and Ott Was an Abuse of Discretion.

■ Copeland and Ott argue that the agency: (1) had an obligation to find willful noncompliance; (2) had an obligation to explore alternatives before dismissing them; and (3) failed to do either. They argue that there was no prejudice to the agency, noting that the record costs were still unascertained at the time of dismissal. DEC responds that this case is not about litigation-ending sanctions, but about Copeland and Ott's "lack of

diligence" and failure to prosecute their appeal fully.

We have previously "expressed a policy favoring adjudication of cases on the merits, and we are reluctant to bar a litigant from his day in court where an alternative remedy would suffice to make the adverse party whole." [37] Before dismissing litigants, we have held that a court—or agency—must find that the violation of an order was prejudicial or otherwise unreasonable and must explore available alternatives to dismissal.[38] Copeland and Ott assert that their failure to meet the deadline was due to their confusion over the conflicting figures and fees, rather than to any willful violation. They point out that even at the time of the dismissal their "questions about the scope, content and cost of the record" remained unanswered. Given the lengthy correspondence over the record and the varying cost and page estimates, this argument is convincing. DEC has offered no evidence to countervail it.

■ We are reluctant to uphold litigation-ending sanctions when there is no prejudice to the opposing party.[39] In this case there was no prejudice to DEC. The agency was not ready to gather and certify the record at the time of Copeland and Ott's dismissal, so the missed deadline had no actual effect on the agency.

■ "We do not require ... explicit findings concerning alternative sanctions, nor do we require ... examin[ation of] every single alternative remedy," but the agency's exploration of alternatives to dismissal must be reasonably thorough.[40] In this case the Commissioner outlined several options for payment of record costs and warned that if Lakosh, Copeland, and Ott did not "take one of the actions" listed, she would "dismiss the adjudicatory hearing matter for failure of the requesting parties to proceed." But a prospective warning of dismissal is not functionally the same as exploring alternatives to

**37.** *Zeller v. Poor,* 577 P.2d 695, 697 (Alaska 1978).

**38.** *Power Constructors, Inc. v. Acres Am.,* 811 P.2d 1052, 1055–56 (Alaska 1991).

**39.** *Anderson v. State, Comm'l Fisheries Entry Comm'n,* 654 P.2d 1320, 1322 (Alaska 1982) (noting that the agency "made no showing that the minimal (seventeen day) delay worked to its disadvantage").

**40.** *Power Constructors,* 811 P.2d at 1055.

dismissal *after* a party has failed to comply with an order. Because the agency easily could have reinstated Copeland and Ott once they submitted payment for the record and because there was neither prejudice nor evidence of willfulness on Copeland and Ott's part, we hold that their dismissal was an abuse of discretion.[41]

## V. CONCLUSION

For the foregoing reasons we AFFIRM in part and REVERSE in part the superior court's decision affirming DEC's actions, we VACATE the judgment entered against Copeland and Ott for attorney's fees and costs, and we REMAND to the superior court for entry of an appropriate attorney's fees and costs award in favor of Copeland and Ott.

---

**41.** Copeland and Ott also argued that their dismissal was a violation of the due process clause of the Alaska Constitution. Because we find that their dismissal was an abuse of discretion, we do not reach the separate question of whether their dismissal was unconstitutional.