*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, e-mail corrections@appellate.courts.state.ak.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| ALASKA COMMUNITY ACTION ON TOXICS, ALASKA SURVIVAL, and COOK INLETKEEPER, ) ) ) ) | |
| Appellants/Cross-Appellees, ) v. ) | Supreme Court Nos. S-14823/14863/ 14873 |
| ) | Superior Court No. 3PA-11-01604 CI |
| LAWRENCE HARTIG, ) COMMISSIONER OF THE ALASKA ) DEPARTMENT OF ENVIRONMENTAL) CONSERVATION (in his official ) capacity), and ALASKA DEPARTMENT ) OF ENVIRONMENTAL ) CONSERVATION, DIVISION OF ) ENVIRONMENTAL HEALTH, and ) ALASKA RAILROAD CORPORATION,) | O P I N I O N<br><br>No. 6879 - March 21, 2014 |
| ) Appellees/Cross-Appellants. ) ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Palmer, Kari Kristiansen, Judge.

Appearances: Paul H. Bratton, Law Offices of Paul H. Bratton, Talkeetna, for Appellants/Cross-Appellees. Laura Fox, Assistant Attorney General, Anchorage, and Michael C. Geraghty, Attorney General, Juneau, for Appellees/Cross-Appellants Lawrence Hartig, Commissioner, and the Alaska Department of Environmental Conservation, Division of Environmental Health. Brian J. Stibitz, Reeves Amodio LLC, Anchorage, for Appellee/Cross-Appellant Alaska Railroad Corporation.

Before: Fabe, Chief Justice, Winfree, Stowers, Maassen, and Bolger, Justices.

MAASSEN, Justice.

# I. INTRODUCTION

This appeal involves the issuance of a permit by the State Department of Environmental Conservation, Division of Environmental Health (the Department), to the Alaska Railroad Corporation for the use of herbicides to control vegetation along a railroad right-of-way. Two public interest organizations, Alaska Community Action on Toxics (ACAT) and Alaska Survival, contend that the Department's issuance of the permit violated due process and the public notice requirement of AS 46.03.320; that the Department abused its discretion in accepting the permit application as complete and in denying standing and intervenor status to a third organization, Cook Inletkeeper; and that ACAT and Alaska Survival should not have been ordered to pay the costs of preparing the administrative record on appeal. The Department and the Railroad cross-appeal on the issue of attorney's fees, contesting the superior court's conclusion that ACAT and Alaska Survival were exempt from fees under AS 09.60.010(c) as constitutional litigants. We conclude that the challenges to the permit are moot due to its expiration and changes in the governing regulatory scheme. We affirm the agency's decisions regarding costs; the cross-appeals on attorney's fees are withdrawn by agreement.

# II. FACTS AND PROCEEDINGS

## A. Facts

Federal safety regulations require that the Alaska Railroad Corporation control the growth of vegetation along its tracks.[1] In 2009, when the Railroad applied for the permit involved in this case, it had not used herbicides to control the growth of

---

[1] *See* 49 C.F.R. § 213.37 (2012).

vegetation since 1983; it had used non-chemical methods such as "mechanized rail-based brush cutters, off-rail hydro axing, [and] wayside manual cutting," and it had experimented with other alternatives "such as steam, infrared, hot water and burning."[2] In April 2009, however, the Federal Railroad Administration (FRA) expressed concern about the condition of the Railroad's tracks, especially vegetation growing between the rails that these alternative abatement methods had failed to control. The FRA cited "947 defects and 74 violations for vegetation safety issues" since 1997, observed that track conditions "continue to get worse," and warned that "civil penalties may be assessed at the maximum level of $16,000 per violation." The FRA further advised that other possible enforcement mechanisms included an emergency order that would remove non-compliant tracks from service.

The Department has the statutory authority to "regulate and supervise the distribution, application, or use of pesticides and broadcast chemicals . . . by a public agency under the jurisdiction of the state" or to prohibit their use.[3] A then-existing regulation prohibited government entities from applying pesticides on state rights-of-way without first obtaining a permit.[4] The Railroad accordingly submitted an application to the Department in May 2009, seeking a permit for the chemical treatment of its right-of-way. It sought to apply an herbicide called AquaMaster and a surfactant called Agri-

---

[2]    The Railroad had applied for an herbicide permit in June 2006, but the Department denied the request.

[3]    *See* AS 46.03.320.

[4]    18 Alaska Administrative Code (AAC) 90.500 (repealed March 7, 2013). "Pesticides," as broadly defined, include, among other things, insecticides, fungicides, and herbicides.

Dex[5] to various sections of track in the 90 miles between Seward and Indian, as well as the spur line to Whittier and 30 acres of land in its yard in Seward.  The chemicals were to be broadcast, with the spray confined to the eight-foot width of the track bed; the total area treated was to be 58.8 acres.  The proposal also allowed for a 100-foot buffer zone around all bodies of water.  The Railroad sought to begin applying the chemicals in June 2010.

Public notice and comment occurred from July 16 to September 15, 2009.  The Department then granted the Railroad's application, and on April 30, 2010, it issued Permit to Apply Pesticides #10-SOL-01, which was effective for two years commencing June 9, 2010.  The Department at the same time issued a 49-page response to concerns raised by the public and an 18-page Decision Document explaining the basis for its grant of the permit.  The decision concluded in part that "[the Railroad] presented a complete permit application to [the Department]" and that "existing scientific evidence and other available information demonstrate that there will be no unreasonable adverse effect expected from the proposed activity."

B.    Proceedings

1.    Request for adjudicatory hearing and stay

On June 1, 2010, ACAT, Alaska Survival, and Cook Inletkeeper, along with several other organizations that are no longer involved in the case, requested an adjudicatory hearing.  The groups argued that issuance of the permit violated the Alaska Constitution as well as several statutes and regulations; that the Railroad's permit application was incomplete because it failed to provide basic and critical information;

---

[5]    A surfactant is a chemical solution that is mixed with the herbicide and intended to improve its dispersal and application.  According to the Department, the surfactant Agri-Dex was "approved for aquatic use by Washington State" and was "not expected to be [a source] of water contamination."

that grant of the permit would adversely affect environmental and human health; and that the Department's decision to grant the permit was arbitrary, especially in light of available alternatives to the use of herbicides. Citing their due process rights and the significant material facts in dispute, the groups also asked that operations under the permit be stayed while they exhausted their administrative remedies.

On June 30, 2010, Commissioner Larry Hartig denied the requested stay for the most part but granted it with respect to seven milepost locations alleged to be within 200 feet of groundwater wells that the Railroad's application had failed to identify. The groups timely appealed the Commissioner's decision to the superior court and filed an emergency motion for a temporary restraining order. The superior court affirmed the Commissioner's decision, finding substantial evidence to support his findings and affirming his assessment that the groups were unlikely to prevail on the merits. But to ensure that the groups had the opportunity to appeal to this court, the superior court stayed the herbicide operation until July 15, 2010.

This court denied the groups' petition for review, and the Railroad applied the chemicals in compliance with its permit.

In August 2010, the Department addressed the groups' request for an adjudicatory hearing, granting it in part and denying it in part. Although the Department accepted that ACAT and Alaska Survival had standing, it found that Cook Inletkeeper, along with other groups not involved in this appeal, failed to meet "the minimal burden of explaining how their interests would be affected by the decision" as required by 18 AAC 15.200(a)(3)(A). The Department then ordered two separate proceedings: a hearing on the existing record under 18 AAC 15.220(b)(3) and an adjudicatory hearing under 18 AAC 15.220(b)(1). The hearing on the record was intended to address the primarily legal issues of (1) whether the Department "reasonably exercised its discretion" in accepting the Railroad's application as complete; (2) whether the Railroad was

required to list the water bodies within 200 feet of the proposed treatment area; and (3) whether the Department applied statutes and regulations "in an unconstitutional manner" during the permitting process. The adjudicatory hearing, an evidentiary proceeding, was intended to decide the factual issues of whether herbicide application "in proximity to any wells" and "in compliance with the permit" posed unreasonable risks to humans and the environment.

Cook Inletkeeper, along with the other organizations denied standing, requested reconsideration of the decision or, in the alternative, permission to intervene under 18 AAC 15.225. The presiding administrative law judge denied both requests, finding that the requesting groups failed to establish standing and failed to show that ACAT and Alaska Survival would not adequately represent their interests.

### 2. Administrative record costs

In October 2010, the Department sought payment from ACAT and Alaska Survival in the amount of $5,443.95, the total cost of producing and certifying the administrative record in preparation for the hearings. ACAT and Alaska Survival responded with a request for a waiver, relying on their non-profit status and lack of economic incentive to litigate. The Department then asked for a variety of financial documents — tax returns, balance sheets, cash flow statements, operating statements, annual budgets, and latest annual reports — that could support the groups' claims of financial need. Arguing that these requests could prove to be "unnecessarily burdensome," ACAT made what was effectively a request under the Public Records Act[6] that the Department produce records showing how it had handled other waiver requests from comparable organizations. The Department produced these records in November 2010, and a month later ACAT and Alaska Survival provided the Department

---

[6] *See* AS 40.25.100 – .350; 2 AAC 96.

with federal tax returns and mission statements.

In January 2011, the Department denied ACAT's and Alaska Survival's waiver request because it found that both groups had substantial funds at their disposal and were financially capable of paying the cost of the record. The Department explained that compiling the record required a significant investment of time from several individuals; it conceded, however, that its use of outside contractors had made the compilation process less streamlined than it could have been, and it therefore reduced the requested payment from $5,443.95 to $2,821.28, or $1,410.64 for each of the two organizations.

ACAT and Alaska Survival moved to set aside these costs, arguing that they were excessive, violated the groups' due process rights, and violated the governing regulations. An administrative law judge denied the motion in March 2011, deeming the costs proper under 18 AAC 15.237. ACAT and Alaska Survival filed a motion for reconsideration, which the administrative law judge largely denied except to grant another reduction due to a clerical error, making the total due $2,335.88.[7] The administrative law judge further specified that, instead of splitting the cost equally between the two groups, ACAT — with its greater financial resources — should be responsible for 75 percent of it.

### 3. Voluntary dismissal of the adjudicatory hearing

In February 2011, ACAT and Alaska Survival moved to dismiss without prejudice the claims that were to be addressed at the adjudicatory hearing — the claims alleging that the herbicides would have adverse effects on humans and the environment.

---

[7] In its brief on appeal, the Department notes an arithmetical mistake of several hundred dollars in the administrative law judge's calculation of the reduced amount — a mistake in favor of ACAT and Alaska Survival — but the Department does not request any relief on that basis.

With another round of spraying set to begin in April 2011, the groups elected to bypass the fact-finding adjudicatory step in favor of getting a final judgment that could be appealed to the superior court in time to prevent the new application of herbicides. Both the Department and the Railroad opposed the motion, contending that the dismissal of the claims should be with prejudice. The administrative law judge granted the request to dismiss without prejudice but explained that, while the groups were not precluded from raising the factual issues in proceedings on future permits, the dismissal barred them from raising the issues again in challenging the permit at issue here.

### 4. Administrative and superior court decisions regarding the hearing on the record

The administrative law judge addressed the issues raised in the hearing on the record in a written decision dated April 22, 2011. He upheld the Department's issuance of the permit, determining that (1) ACAT and Alaska Survival were not denied due process; (2) they were not denied their constitutional rights of common use of natural resources[8] and of free access to public waters;[9] and (3) the Department did not abuse its discretion in treating the Railroad's application as functionally complete despite some deficiencies. The Commissioner adopted the administrative law judge's decision as the final decision of the Department.

The superior court affirmed the Department's decision on June 29, 2012.

---

[8] The Alaska Constitution, article VIII, section 3, provides: "Wherever occurring in their natural state, fish, wildlife, and waters are reserved to the people for common use."

[9] The Alaska Constitution, article VIII, section 14, provides: "Free access to the navigable or public waters of the State, as defined by the legislature, shall not be denied any citizen of the United States or resident of the State, except that the legislature may by general law regulate and limit such access for other beneficial uses or public purposes."

It also affirmed the administrative law judge's earlier decision regarding the costs of the administrative record, deciding that the Department had not acted arbitrarily in compiling the record; had not violated ACAT's and Alaska Survival's due process rights by demanding that they pay the costs; and did not err in compiling the record under its regulations instead of under the Public Records Act, AS 40.25.122.

The Department and the Railroad then moved for attorney's fees. The superior court denied the motion; it reasoned that ACAT and Alaska Survival were exempt from attorney's fees under AS 09.60.010(c) because their appeal raised constitutional issues, it was not frivolous, and they lacked an economic incentive to litigate. The court also clarified the Department's entitlement to the record costs, ordering ACAT and Alaska Survival to pay their respective shares.

ACAT, Alaska Survival, and Cook Inletkeeper appealed to this court on the issues of the permit's validity and the record costs. The Department and the Railroad cross-appealed on the issue of attorney's fees.

## III.   STANDARDS OF REVIEW

"We resolve issues of standing and mootness using our independent judgment because, as matters of judicial policy, these are questions of law."[10] When the superior court functions as an intermediate court of appeal in an administrative case, we directly review the merits of the administrative decision.[11] "We review an agency's application of its own regulations for whether the agency's decision was 'arbitrary,

---

[10]     *Ahtna Tene Nene v. State, Dep't of Fish & Game*, 288 P.3d 452, 457 (Alaska 2012) (quoting *Ulmer v. Alaska Rest. & Beverage Ass'n (ARBA)*, 33 P.3d 773, 776 (Alaska 2001)) (internal quotation marks omitted).

[11]     *McKitrick v. State, Pub. Emp. Ret. Sys.*, 284 P.3d 832, 837 (Alaska 2012).

unreasonable, or an abuse of discretion.' "[12] This requires us to give deference to an administrative determination "if it has a reasonable basis in law and fact."[13]

## IV. DISCUSSION

### A. The Issues On Appeal Are Largely Moot.

Except for issues related to attorney's fees and the costs of the administrative record, the claims on appeal are moot.[14] "We generally will not consider questions 'where events have rendered the legal issue moot.' "[15] A claim is moot if there is no "present, live controversy"[16] or if it is impossible to provide the relief sought.[17] In

---

[12] *Alaska Exch. Carriers Ass'n, Inc. v. Regulatory Comm'n of Alaska*, 202 P.3d 458, 460-61 (Alaska 2009) (quoting *Griffiths v. Andy's Body & Frame, Inc.*, 165 P.3d 619, 623 (Alaska 2007)).

[13] *Storrs v. State Med. Bd.*, 664 P.2d 547, 554 (Alaska 1983).

[14] In conjunction with its request for the rescission of the permit, ACAT and Alaska Survival argue the following issues on appeal: the Commissioner's decision to affirm the permit despite failing to disclose the proximity of spray areas to water denied due process under article I, section 7 of the Alaska Constitution and violated the prior-notice safeguards of article VIII, section 10; the Commissioner abused his discretion by affirming the agency's issuance of the permit despite the failure to locate water wells; the Commissioner abused his discretion by affirming the agency's issuance of the permit on grounds that it was limited to areas not open to public access, as parts of the Railroad's right-of-way are public places for which posted notice is required; the Commissioner's denial of Cook Inletkeeper's standing violated its right to petition for review under article I, sections 1, 6, and 7 of the Alaska Constitution; and the Commissioner abused his discretion by denying Cook Inletkeeper standing to pursue the appeal.

[15] *Copeland v. Ballard*, 210 P.3d 1197, 1201-02 (Alaska 2009) (quoting *Kodiak Seafood Processors Ass'n v. State*, 900 P.2d 1191, 1195 (Alaska 1995)).

[16] *Ulmer v. Alaska Rest. & Beverage Ass'n*, 33 P.3d 773, 776 (Alaska 2001) (quoting *Gerstein v. Axtell*, 960 P.2d 599, 601 (Alaska 1998)).

[17] *Id.*

*State, Department of Natural Resources v. Greenpeace, Inc.*, we noted that where the underlying temporary water use permit had expired, the disputes "concerning that permit are consequently technically moot."[18]  And in *Copeland v. Ballard* we observed:

> We have previously found cases moot when agency-issued permits had expired but the permit opponents still sought declaratory judgment that the agency actions were unlawful. We have emphasized that "[m]ootness is particularly important in a case seeking a declaratory judgment because there is an added risk that the party is seeking an advisory opinion."[19]

The relief ACAT and Alaska Survival seek on this appeal is the rescission of the Railroad's permit.  But that permit, effective in June 2010, had a two-year term and expired on June 9, 2012.  Because the herbicide was applied during the life of the permit, which has now expired, any rescission that we grant would have no practical effect.  Under our case law, the claims are technically moot.

B.      **This Case Does Not Fall Under The Public Interest Exception To The Mootness Doctrine.**

Technical mootness notwithstanding, "we may choose to address certain issues if they fall under the public interest exception to the mootness doctrine."[20]  In determining whether the public interest exception applies, we consider three factors: "(1) whether the disputed issues are capable of repetition, (2) whether the mootness doctrine, if applied, may cause review of the issues to be repeatedly circumvented, and (3) whether the issues presented are so important to the public interest as to justify

---

[18]      96 P.3d 1056, 1062 (Alaska 2004).

[19]      210 P.3d at 1202 (quoting *Kodiak Seafood Processors*, 900 P.2d at 1194-95 (Alaska 1995)) (citing *State, Dep't of Natural Res. v. Greenpeace, Inc.*, 96 P.3d at 1068 and *Kodiak Seafood Processors*, 900 P.2d at 1196).

[20]      *Kodiak Seafood Processors*, 900 P.2d at 1196.

overriding the mootness doctrine."[21] No single factor is dispositive, because "each is an aspect of the question of whether the public interest dictates that a court review a moot issue. Ultimately, the determination of whether to review a moot question is left to the discretion of the court."[22]

In reviewing the first factor — whether the issues are capable of repetition — "we have refused to apply the public interest exception to unusual factual circumstances that were unlikely to repeat themselves or situations where the applicable statute or regulation was no longer in force."[23] The Department argues that this factor is dispositive here; the circumstances that prompted the litigation are unlikely to be repeated because the regulations governing the application of herbicides were recently revised. In March 2013 the Department repealed and readopted, with narrower language, the regulation that requires the permit at issue here.[24] The Department also adopted an entirely new regulation, 18 AAC 90.640 ("Pesticide applications on state land"), also effective in March 2013, that authorizes public entities such as the Railroad to bypass the permitting process if they instead adopt an "integrated pest management plan" that satisfies certain requirements of publication, notice, and record-keeping.[25] The Railroad has adopted such a plan, and its future herbicide use therefore falls under the new

---

[21]    *Id.*

[22]    *Id.* (internal citation omitted).

[23]    *Ahtna Tene Nene v. State, Dep't of Fish & Game*, 288 P.3d 452, 459 (Alaska 2012) (quoting *Akpik v. State, Office of Mgmt. & Budget*, 115 P.3d 532, 535 (Alaska 2005)).

[24]    *See* 18 AAC 90.500 (effective March 7, 2013) (replacing broad requirement of permit with requirement of permit only when project "affects property owned separately by two or more persons").

[25]    18 AAC 90.640(a).

regulation rather than the permitting process.[26]

ACAT and Alaska Survival note that the permitting regulations still exist and that, despite the Railroad's integrated pest management plan, there are several possible scenarios in which the Railroad could still be required to seek a permit before applying herbicides.[27] ACAT and Alaska Survival accordingly conclude that this case meets the first factor because not only is the relevant regulation still in place, there could still be a future controversy involving its application to a Railroad herbicide permit.

But those theoretical future uses of the permitting process, as well as being hypothetical, would not likely present the same factual and legal context as this case. The Railroad's 2010 permit has expired, the Railroad has published an integrated pest management plan that will govern its future use of herbicides on the track right-of-way, the Railroad will therefore not need a permit if it chooses to conduct the same operation again, and a future dispute over that operation will be controlled by the new regulation, 18 AAC 90.640. Thus, the particular factual and legal circumstances of *this case* are unlikely to be repeated, and ACAT and Alaska Survival fail to satisfy the first factor for the public interest exception to the mootness doctrine.

But ACAT and Alaska Survival do satisfy the second factor — whether the issue could repeatedly evade review. We noted in *Copeland* that we had "previously analyzed the second prong . . . by comparing the time it takes to bring the appeal with the

---

[26] *See* Alaska Railroad Corporation, *Vegetation Management*, http://www.alaskarailroad.com/corporate/Corporate/SafetySecurity/VegetationManag ement/tabid/419/Default.aspx (last visited Feb. 27, 2014).

[27] These scenarios, according to ACAT and Alaska Survival, include "1) application of herbicides by state agencies to private lands owned separately by two or more persons; 18 AAC 90.500, 2) projects where herbicides are allowed to be used [on] the waters of the state; 18 AAC 90.505(1), and, 3) projects where herbicides are aerially sprayed; 18 AAC 90.505(2)."

time it takes for the appeal to become moot."[28]  The permit at issue here was valid for two years, and full judicial review in that time was unlikely.  The Department argues that because the regulations have since been revised to allow for five-year permit terms,[29] "future permitting disputes are unlikely to evade review."  We observed in *Copeland*, however, that the lengthy appeal in that case "demonstrate[d] that it is unreasonable to assume an opponent to an approved contingency plan would be able to appeal the agency decision within the five-year duration of the plan."[30]  Such determinations are necessarily case specific, but the matter before us has already taken over three years, and it likely would have taken longer had ACAT and Alaska Survival not voluntarily dismissed their fact-based claims at the administrative level in order to expedite judicial review.  It is certainly possible that a future challenge to a pesticide permit — even a permit valid for five years — could evade appellate review.  Accordingly, the second factor of the public interest exception to the mootness doctrine is satisfied.

However, ACAT and Alaska Survival fail to meet the third factor, which assesses whether the issues presented are important enough to the public interest to override the mootness doctrine.  We stated in *Copeland* that "[w]e have found this prong met when the case involved 'concepts of fairness underlying the right to procedural due process,' the preservation of clean water, or 'situations, otherwise moot, where the legal power of public officials was in question.' "[31]  We held that the issues presented in

---

[28]     *Copeland v. Ballard*, 210 P.3d 1197, 1202 (Alaska 2009).

[29]     *See* 18 AAC 90.530(c) ("A permit is not valid for more than five years after its effective date.").

[30]     *Copeland*, 210 P.3d at 1202.

[31]     *Id.* at 1203 (internal footnotes omitted) (quoting *State, Dep't of Natural Res. v. Greenpeace, Inc.*, 96 P.3d 1056,1062-63 (Alaska 2004); *Fairbanks Fire Fighters*
(continued...)

*Copeland* satisfied two of these requirements.[32]  First, the case involved plans to protect the Alaskan environment from oil spills, "a matter of utmost importance to the public interest" because of "the potentially devastating effects . . . on the ecology and economy of the state."[33]  Second, since the case involved a due process challenge to administrative procedures, we reasoned that "given the need for transparency in governance and access to administrative records, this also is a matter of importance to the public interest."[34]  In *Copeland*, ultimately, we considered the due process claims despite their technical mootness.[35]

ACAT and Alaska Survival argue that the result in this case is governed by *Copeland*, because this case, too, presents both a claim for the "preservation of clean water" and a question of "fairness in procedural due process" in agency procedures.[36] But we cannot disassociate our view of the third factor in this case from our analysis of the first, in which we concluded that the factual scenario before us is unlikely to be repeated given the changes in the regulatory structure.  The public interest does not require us to give an advisory opinion on the permitting process that governed the Railroad's past application of herbicides, given the unlikelihood that the same process will govern it next time.  This case is less like *Copeland* than it is like another recent case in which we analyzed the mootness doctrine, *Ahtna Tene Nene v. State, Department of*

---

[31]    (...continued)
*Ass'n, Local 1324 v. City of Fairbanks*, 48 P.3d 1165, 1169 (Alaska 2002)).

[32]    *Id.*

[33]    *Id.*

[34]    *Id.*

[35]    *Id.*

[36]    *See id.*

*Fish & Game.*[37]

In *Ahtna*, we declined to apply the public interest exception to the mootness doctrine where the issues were "certainly germane to the public interest" but were "simply not ripe for adjudication."[38] The appellants in *Ahtna* challenged a permit system instituted by the Alaska Board of Game in 2009, regulating hunts for caribou and bull moose in the Nelchina basin.[39] The regulations were challenged in March 2009, and in October 2010 the Board of Game amended its permit system.[40] The amended regulations went into effect in 2011, after the case reached this court on appeal but before we decided it.[41] We found that the appeal was moot because the challenged regulation was no longer in effect.[42] The appellants argued that the public interest exception should apply, as a decision in the case would help settle a "source of ongoing litigation between the parties" regarding the "legitimacy of the community hunt enabling statute . . . and related regulations that provide different hunting opportunities."[43] In assessing this argument, we noted that it "ignore[d] the relief initially sought in this appeal and instead ma[d]e broad requests for premature declaratory judgments regarding the constitutionality of the community harvest system as a whole unrelated to any factual

---

[37]     288 P.3d 452, 459 (Alaska 2012).

[38]     *Id.* at 460.

[39]     *Id.* at 455.

[40]     *Id.* at 456.

[41]     *Id.* at 457.

[42]     *Id.* at 458.

[43]     *Id.* at 459.

dispute."[44]  We determined, therefore, that any opinion on the validity of the 2009 regulations would be irrelevant to the amended scheme and would be "merely advisory."[45]

Here, ACAT and Alaska Survival seek relief from an expired permit that the Railroad is unlikely to apply for again through the same regulatory process at any time in the foreseeable future.  In *Ahtna*, the challenged regulation was amended and no longer applied;[46] ACAT and Alaska Survival differentiate this case by pointing out that the permitting process is still in place and could be the source of future controversy appropriate for our review.  But again, we cannot ignore the factual setting in which we have been asked to review the regulations.  Indeed, much of ACAT's and Alaska Survival's briefing on the public interest exception airs their concerns about the Railroad's new integrated pest management plan.  They complain, for example, that the Railroad's new plan may not meet the "least possible hazard" standards of the new regulation; that the Railroad has not detailed how it will protect water and the environment under the new regime; that the Railroad's plan may still be rejected as failing to meet the new regulatory requirements; and that, in general, there could be a number of flaws with the new regulations and their studied omission of public comment and permits for the use of pesticides.

We conclude that ACAT and Alaska Survival are making for the same kind of "broad requests for premature declaratory judgments . . . unrelated to any factual

---

[44]     *Id*.

[45]     *Id*. at 460.

[46]     *Id*. at 458.

dispute"[47] that *Ahtna* sought to avoid. While the water quality and procedural due process concerns raised in this appeal are "certainly germane to the public interest,"[48] they are based in the permitting process that has been rendered irrelevant to future disputes by the Railroad's election to adopt an integrated pest management plan pursuant to the new regulation; possible issues with the new regulation are "simply not ripe for adjudication in this case."[49] Issues that would require us to issue an advisory opinion on facts and law that are now largely irrelevant are simply not important enough to the public interest to justify overriding the mootness doctrine.

Having weighed the three factors, we decline to apply the public interest exception to the mootness doctrine in this case. We therefore do not reach any of the challenges to the expired permit itself.[50]

### C. The Agency's Assessment Of Record Costs Was Not Arbitrary, Unreasonable, Or An Abuse Of Discretion.

The remaining issues involve the costs of preparing the record for the administrative appeal, which were assessed against ACAT and Alaska Survival. The groups present three arguments in support of their claim that the costs should have been waived in their entirety: (1) the Department compiled the record arbitrarily and inefficiently; (2) the denial of a waiver based on the groups' public interest status

---

[47]     *See id.* at 459.

[48]     *See id.* at 460.

[49]     *See id.*

[50]     At oral argument, both the Department and the Railroad agreed that their cross-appeals on the issue of attorney's fees could be considered withdrawn if we decided that the other issues on appeal (except for those involving the cost of the administrative record) were moot. Given our decision on mootness, therefore, we do not need to address the cross-appeals.

violated their right to equal protection under article I, section 1 of the Alaska Constitution; and (3) the denial of the waiver violated due process. We affirm the agency decision.

### 1. It was not an abuse of agency discretion to require ACAT and Alaska Survival to pay the administrative record costs.

ACAT and Alaska Survival first claim that the Department abused its discretion "by arbitrarily compiling the record." Under the Public Records Act, the issue is governed by the agency's own regulations.[51] The pertinent regulation requires that Department staff prepare the record, to

> include the permit application and supporting documentation, written and electronic correspondence concerning the proposed action, additional information submitted by the applicant to the department, public comments and information submitted to the department on the proposed decision, tapes or transcripts of any public hearing, the department's decisional documents, and other materials that the department considered or relied upon in making the department's decision.[52]

The regulations further provide that a person may obtain a copy of the record "at the requesting party's expense" and that "[t]he requestor shall pay the cost of gathering and certifying the agency decision record."[53] Finally, the regulations provide that "[t]he department will waive all or part of the cost of gathering and certifying the record if the

---

[51] AS 40.25.122 ("[W]ith respect to a person involved in litigation, the records sought shall be disclosed in accordance with the rules of procedure applicable in a court or an administrative adjudication. In this section, 'involved in litigation' means a party to litigation or representing a party to litigation, including obtaining public records for the party.").

[52] 18 AAC 15.237(a).

[53] 18 AAC 15.237(b) and (c).

requestor demonstrates, to the department's satisfaction, an inability to pay those costs."[54] We review the Department's application of these regulations to determine whether its demand for costs in this case was arbitrary, unreasonable, or an abuse of discretion.[55]

ACAT and Alaska Survival claim the Commissioner abused his discretion in several ways. First, they allege that the Department failed to maintain a "discreet and identifiable agency record" and that they should not be held "responsible for the costs of constructing the record after the fact." They claim that "[i]t was the agency's duty . . . to see that correspondence dealing with the permit was sequestered into a separate file as part of the permit issuance record." But they cite no legal basis for such a duty (other than the constitutional provisions we discuss below). The regulations explicitly refer to "gathering,"[56] "certifying,"[57] and "prepar[ing] the agency decision record,"[58] implying that the necessary materials may be found in diverse places and must be collected and organized for purposes of appellate review, a process that is likely to involve time and expense on the part of the agency. We see no basis on this record for us to impose a particular record-keeping plan on an executive agency.

ACAT and Alaska Survival also argue that the record compilation was inefficient and could have been more streamlined. They cite the relatively high rates charged by an independent consultant and high-level agency employees for retrieving

---

[54] 18 AAC 15.237(c).

[55] *See Alaska Exch. Carriers Ass'n, Inc. v. Regulatory Comm'n of Alaska*, 202 P.3d 458, 460-61 (Alaska 2009).

[56] *See* 18 AAC 15.237(c).

[57] *See id.*

[58] *See* 18 AAC 15.237(a).

record materials and emails, asserting that clerical staff could have performed the task more cheaply; they also express doubt that all of the "emails scattered throughout various contractor and employee inboxes could have actually been considered [in] the decision-making process" and assert that they were thus required to pay for the collection and copying of irrelevant materials. But whatever merit there may be in these arguments, the Department conceded that it "may not have been as streamlined in its collection efforts . . . as it would be for future efforts," and it voluntarily reduced the assessed cost "by the amount commensurate with that part of the process." This resulted in a near halving of the cost, from $5,443.95 to $2,821.28, an amount the administrative law judge found was "not excessive given the complexity of the issues related to this pesticide permit." On the groups' motion to reconsider, the administrative law judge reduced the amount further (because of an arithmetical error) to $2,335.88, to be allocated between ACAT and Alaska Survival. He also found that the Department's initial calculation had been based on "the actual cost of collecting the documents as it was required to do by regulation," and that while the process may have been inefficient, it was not arbitrary.

Given these findings, and given the significant reduction that the Department voluntarily made to reflect its admitted inefficiencies, we cannot say that the Department acted unreasonably or arbitrarily or that it abused its discretion in its assessment of the costs of the record.

### 2. The appellants' constitutional claims are waived.

ACAT and Alaska Survival also assert that the assessment of record costs violates their equal protection rights because the Public Records Act and 18 AAC

-21-                                                                              6879

15.237(c) differentiate between litigants and other requestors.[59] They did not raise this argument below. The administrative law judge addressed equal protection arguments raised in two other contexts: one involving the groups' public records request for additional information and one alleging that the Department "treats litigants differently based on the issues raised in the hearing request." These are different arguments than the one alleged here. Generally, we will not consider arguments on appeal that were not raised below.[60] Because ACAT's and Alaska Survival's equal protection argument was not raised below, we decline to address it.

ACAT and Alaska Survival also make a perfunctory due process argument: "It is a denial of due process to expect the citizen's group to pay the agency for performing work after the fact that was already part of the agency's responsibility as part of its delegated decision-making process." They provide no further legal analysis. "Points that are inadequately briefed are considered waived."[61] The failure to analyze this constitutional issue amounts to its abandonment.

---

[59]     For example, under the Public Records Act someone who requests copies of records need not pay the personnel costs involved in "complet[ing] the search and copying tasks" until they exceed five person-hours per calendar month, AS 40.25.110(c); but no such exemption for the first five person-hours applies to a request made by a party to an administrative appeal in the Department, *see* 18 AAC 15.237(b), (c).

[60]     *Sengupta v. Univ. of Alaska*, 21 P.3d 1240, 1255 n.61 (Alaska 2001) ("This court will not consider arguments on appeal that were not raised below unless the new issues either establish plain error or do not depend on new or controverted facts, are closely related to the appellant's arguments at trial, and could have been gleaned from the pleadings.").

[61]     *Great Divide Ins. Co. v. Carpenter ex rel. Reed*, 79 P.3d 599, 608 n.10 (Alaska 2003) (citing *State v. O'Neill Investigations, Inc.*, 609 P.2d 520, 528 (Alaska 1980) ("When, in the argument portion of a brief, a major point has been given no more than cursory statement, we will not consider it further. Failure to argue a point constitutes an abandonment of it.")).

## V. CONCLUSION

The appeal is DISMISSED as to those issues that are moot (the direct challenges to the permit).  We otherwise AFFIRM the decision of the superior court.